[James *et al.* v. The State.]

# James *et al.* v. The State.

### Indictment for Arson.

1. *Indictment; misjoinder of counts; motion in arrest of judgment.* Where an indictment charges a misdemeanor in one count and a felony in another, there is a misjoinder; and upon a general verdict of "guilty as charged in the indictment," a motion in arrest of judgment should be sustained.

2. *Same; arson in the third degree* —An indictment, which charges that the defendant "willfully set fire to or burned a gin house," &c., without alleging the value of the gin house, is good as a charge of statutory arson in the third degree.

3. *Evidence as to identity of tracks.*—In a criminal case, where the evidence shows that tracks having physical peculiarities were discovered about the scene of the crime, a witness, who is shown to be familiar with such peculiarities and to have had the means of forming a correct conclusion as to their identity, can testify as to the identity of such tracks with the tracks of the defendant, as a collective fact.

4. *Evidence as to testimony of deceased witness.*—A witness who testifies that he was present at a former trial of the pending case and heard another witness, who has since died, then testify, and that he remembers his testimony, is competent to testify as to what was the testimony of the deceased witness on the former trial.

5. *General objections to testimony.*—General objections interposed to the testimony of a witness, without specifying any particular portions thereof, are rightly overruled, if any part of the testimony of such witness is admissible.

6. *Absent witness; proof of his testimony on a former trial.*—In a criminal case, before proof of the testimony of an absent witness, who testified on a former trial of the then pending suit, can be made, it must be shown that the witness is beyond the jurisdiction of the court; having removed from the State permanently, or for an indefinite time.

7. *Opinion evidence.*—Where, on a trial under an indictment for arson, there is evidence tending to show that the defendant carried two jugs of kerosene to the house that was burned, and by means of the kerosene set fire to said house, it is permissible for a witness, who found pieces of jugs in the debris of the burned building, to testify that such pieces looked like they had been burned; such testimony being the expression of an opinion it is competent for a witness to give.

8. *Charge of the court to the jury; as to effect of a conviction upon a co-defendant, who obtained a severance.*—On the trial of several defendants

for arson, who were jointly indicted with E., but E. had secured a severance, charges are not erroneous which instruct the jury "that E. is not on trial in this case, and that if the jury believe that the defendants are guilty, they can find them guilty, whether the jury believe E. had anything to do with the burning of the house or not," and "the jury may convict one or more of the defendants as the evidence may justify, and this jury has nothing to do with the influence that a verdict of guilty in this case may have in another cause against E. for the same offense."

9. *Same; possibility of house having been accidentally burned does not justify acquittal.*—On a trial under an indictment for arson, a charge which instructs the jury that "If they believe from all the evidence that the burning of the gin house might have been carelessly or negligently or accidentally done, they must give defendants the benefit of such evidence, and may look to all the circumstances and the conduct of those whose duty it was to fire the engines and look after the property, which may go to account for the burning, as generating a reasonable doubt in defendants' favor, and they should acquit," is properly refused; since the jury may, nevertheless, have been satisfied beyond a reasonable doubt that such was not the case, but that the defendants willfully burned the gin house.

10. *Argumentative charges* are properly refused.

APPEAL from the City Court of Selma.

Tried before the Hon. J. W. MABRY.

At the January term, 1892, of the city court of Selma the grand jury preferred the following indictment : "The grand jury of said county charge that before the finding of this indictment Lee Mack, Giller James, John Brown, Dow Williams and Wes Etheridge willfully set fire to or burned the gin-house of A. W. Coleman.

"The grand jury of said county further charge that before the finding of this indictment Lee Mack, Giller James, John Brown, Dow Williams and Wes Etheridge willfully set fire to or burned a mill of A. W. Coleman, which said mill, with the property therein contained, was of the value of three thousand dollars."

Wes Etheridge moved for a severance which was granted. and the appellants, Giller James, John Brown and Dow Williams, were tried together. Upon the trial of the cause, the jury returned a verdict finding the defendants "guilty as charged in the indictment." The defendants thereupon made a motion in arrest of judgment as to the judgment rendered against them, on the following grounds : "1st. The first count in the indictment in said cause charges said defendants with arson in the third

degree, and the second count in said indictment charges
them with arson in the second degree, and the jury ren-
dered a general verdict of guilty against these defend-
ants, and did not specify on what count of the indict-
ment they found said defendants guilty.    2d.    The jury
failed to assess any punishment against said defendants.
3d.    The court can not ascertain from the verdict in this
case whether the defendants should be sentenced for
arson in the 2d degree or for arson in the 3d degree."
This motion was overruled, and the defendants duly ex-
cepted.

On the trial of the case, as is shown by the bill of ex-
ceptions, A. W. Coleman, who was introduced as a wit-
ness for the State, testfied, that in the year 1891 he
owned a gin-house and mill in Dallas county, and that
the building and machinery together were worth $3,000;
that on Monday night of the last week in August, 1891,
his gin-house and mill were burned; that the morning
after the burning one Ike Kyser came to his house and
told him of the fire; and that after having gone to the
scene of the fire with the said Kyser he went back in
about an hour and made an examination about his gin-
house.    His testimony in this respect is thus stated in
the bill of exceptions: "I found a huddle of tracks at
the forks of the road, a short distance from the gin-
house, and tracks leading from that place up to the gin-
house.    At the door of the seed-room I found five differ-
ent tracks.    Here witness was asked whose tracks they
were?    Defendants objected on the ground that the
question called for the opinion or conclusion of the wit-
ness.    The court sustained the objection.    The court in-
structed the witness that he could describe the physical
peculiarities of the tracks of defendants and of the tracks
at the seed-room.    The witness further stated: 'I have
very frequently seen the tracks of the defendants, Giller
James, John Brown and Dow Williams.'    Witness here
described the physical peculiarities of the tracks of each
of the defendants.    Witness was then asked what was
the similarity between the tracks at the forks of the
road and the seed-room door.    Defendants objected to
this question, on the ground that it called for the opin-
ion of the witness.    The court overruled the objection,
and the defendants excepted.    Witness then stated that
the peculiarities of the tracks at the huddle at the forks

[James *et al.* v. The State.]

of the road and at the seed-room door were the same. He then described the physical peculiarities of the tracks at the huddle at the forks of the road, which had the same peculiarities, respectively, as the tracks of the defendants.''

This witness further testified that he was present at the former trial of this case when there was a mis-trial, and heard Bob Brown's testimony; that the said Brown was a witness for the State, and that he, witness, remembered his testimony. Brown was dead at the time of the present trial, having died since the former trial. This witness was then asked: ''What was the testimony of Bob Brown?'' Defendants objected to this question, on the ground that no sufficient predicate had been laid for the introduction of secondary evidence of the testimony of the deceased witness, and that it was not shown that the witness Coleman recalled the substance of the testimony of the witness Brown on the former trial. This objection of the defendant was overruled by the court, and the defendants duly excepted. The witness then stated: ''I remember substantially all of the testimony of Bob Brown. He swore that he (Bob), Champ Powers, Lee Mack, and the defendants were hired by Wes Etheridge for $10 apiece to burn the gin-house of A. W. Coleman. That on the Monday night in question, Wes Etheridge gave them two jugs of kerosene oil; that they, Bob Brown, Lee Mack, Champ Powers, Giller James and John Brown went from the store of Wes Etheridge that night between 8 and 9 o'clock to the gin-house, that he (Bob) stood off at a little distance and watched while defendants, John Brown and Giller James and the others, went into the seed-room and fired the gin-house; that defendant Dow Williams, who was in the agreement with Etheridge, came up about the time the fire started.'' Witness Coleman further testified: ''Defendant, Giller James, made bond after he was arrested, and then he ran away. I had him re-arrested and put in jail. He sent for me while he was in jail. I went to see him, and asked him if he sent for me. He said he did send for me by Jack Coleman; that Jack told him that I said that if he (Giller) would turn State's evidence like Bob Brown that I would let him off. I told him that I did not say anything of the kind, that he had shown his guilt by running away. Giller then

said that Etheridge and Ike Kyser had run him off."
Defendants objected to this evidence, on the ground that
it was irrelevant, incompetent, and, so far as it sought
to show a confession, involuntary.   The court overruled
the objection, and the defendants excepted.

Upon the cross-examination of the witness Coleman,
after having stated that one Hardy testified on a former
trial of the defendants, he was asked by the defendants :
"What was his (Hardy's) testimony?"   The State ob-
jected to this question, on the ground that no predicate
had been laid for the secondary evidence of Hardy's testi-
mony.   The defendants offered to prove that a subpoena
to this court had been issued for Hardy, returned not
found, that his whereabouts were unknown to defend-
ants, that when last heard of he was in Birmingham,
Ala. ; that they asked the question for the purpose of
proving what Hardy did swear on the former trial, and
also for the purpose of testing the recollection of the
witness.   The court sustained the objection, and the de-
fendants each excepted."

One A. Hasselvander, a witness for the State, testified
that about two weeks after the fire he came to see about
building a gin-house for Mr. Coleman, and examined
the spot where the gin-house formerly stood ; that he
found pieces of jugs that would make about two jugs,
and that "they looked like they had been burned."   The
defendants objected to the statement of this witness that
"They looked like they had been burned," on the ground
that it was the opinion of the witness.   The court over-
ruled the objection, and the defendants duly excepted.
The other evidence for the State tended to connect the
defendants with the burning of the said gin-house.

The testimony for the defendants was in conflict with
that of the State, and they introduced testimony tend-
ing to prove an *alibi* for each of them.

After the introduction of all the testimony, the court,
at the request of the State, gave the following written
charges to the jury :   (1.)  "The court charges the jury
that Wes. Etheridge is not on trial in this case, and that
if the jury believe that the defendants are guilty, they
can find them guilty whether the jury believe that Wes.
Etheridge had anything to do with the burning of the
house or not."   (4.)  "The jury may convict one or more
of the defendants as the evidence may justify, and this

[James *et al.* v. The State.]

jury has nothing to do with the influence that a verdict of guilty in this case may have in another case against Etheridge for the same offense—they must try this case on its own merits." The defendants, each, separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by them : (3.) "Defendants ask the court to charge the jury that, if they believe from all the evidence that the burning of the gin-house might have been carelessly or negligently, or accidentally done, they must give the defendants the benefit of such evidence, and may look to all the circumstances, and the conduct of those whose duty it was to fire the engines and look after the property, which may go to account for the burning, as generating a reasonable doubt in defendants' favor, and they should acquit the defendants." (4.) "That such corroborating testimony to avail anything must not only tend to show the commission of the offense charged, but, to the satisfaction of the jury beyond a reasonable doubt, connect the defendants with the commission of the offense." (9.) "The court charges the jury that if the said eleven men were listening to hear if the clock struck, then it is not the law that the evidence of one man must have greater weight than theirs." (14.) "The court charges the jury that mere proximity of the accused to the scene of the burning is not even a circumstance to show their guilt, when the evidence also shows that other people were equally near or nearer."

MALLORY & McLEOD, for appellants.—1. There is a misjoinder of counts in the indictment. The first count is for arson in the third degree—a misdemeanor. The second count is for arson in the second degree—a felony. Criminal Code of 1886, § 3781; Code of 1876, § 4347; *Cheatham v. State*, 59 Ala. 40 ; *Washington v. State*, 68 Ala. 85 ; *Cook v. State*, 83 Ala. 62 ; *Brown v. State*, 52 Ala. 345; 3 Brick. Dig., 190, §§ 86, 87, 88, 89, 90, 91, 92. See construction of *Overstreet v. State*, 46 Ala. 30, in 3 Brick. Dig., 190, § 92. An indictment containing a count charging a felony, and a count charging a misdemeanor is fatally defective, nor can there be a joinder where the legal judgment on each count would be materially different.—*Adams v. State*, 55 Ala. 143. The court

below should have granted the motion in arrest of judgment.—*Francois v. State*, 20 Ala. 83 ; *State v. Beckwith*, 1 Stew. 318.

2. The court erred in giving charges numbered one and four, requested by the State. The fourth charge given violated the well established doctrine of reasonable doubt.—*Pierson v. State*, 99 Ala. 148 ; *Heath v. State*, 99 Ala. 179; *Harris v. State*, 100 Ala. 129 ; *Rhea v. State*, 100 Ala. 119 ; *Green v. State*, 97 Ala. 64.

WM. L. MARTIN, Attorney-General, for the State.— The motion in arrest of judgment was properly overruled. Although the first count in the indictment may have been defective in failing to aver the value of the property destroyed by fire, there was no demurrer interposed ; and the general verdict of guilty having been rendered, the conviction will be rested on the good count, and thus sustained.—*May v. State*, 85 Ala. 14 ; *Glenn v. State*, 60 Ala. 104 ; *Rowland v. State*, 55 Ala. 210; *Hornsby v. State*, 94 Ala. 55.

The court did not err in permitting the witness Coleman to testify as to the physical peculiarities of the tracks found at the place of the crime.—1 Brick. Dig., 873 ; 3 Brick. Dig., 435-6; *Potter v. State*, 92 Ala. 37; *Riley v. State*, 88 Ala. 193.

It was permissible to prove the testimony of the deceased witness Brown.—*Lowe v. State*, 86 Ala. 47 ; *South v. State*, 86 Ala. 617 ; *Perry v. State*, 87 Ala. 30 ; *Pruitt v. State*, 92 Ala. 41 ; *Lucas v. State*, 96 Ala. 51.

HEAD, J.—If, as contended by appellants, the indictment sufficiently charges a misdemeanor in one count, and a felony in another, judgment could not be lawfully pronounced upon a general verdict of conviction thereon, for the obvious reason that the court could not know what punishment to impose. Each of the offenses being sufficiently charged, there would be no reason for referring the conviction to one charge rather than the other; and the punishments prescribed by law for the several offenses being entirely different, it could not possibly be known what sentence to pronounce. Hence it is that such an indictment is entirely bad on demurrer for misjoinder, and if a trial and conviction are had thereon, in the absence of demurrer, unless the verdict

itself ascertains the offense of which the prisoner is convicted, judgment will be arrested on motion.—*Adams v. State*, 55 Ala. 143. As said in that case, "to authorize the joinder there must be a concurrence in the nature of the offense, the mode of trial and the character of punishment." The rule is well settled, that if the indictment contains a good and a bad count, the defendant will be put to his demurrer. A general verdict of conviction in such case, will be referred to the good count; hence judgment will not be arrested. The bad count will, on motion in arrest, be disregarded.—*Rowland v. State*, 55 Ala. 210; *Glenn v. State*, 60 Ala. 104; *May v. State*, 85 Ala. 14; *Hornsby v. State*, 94 Ala. 55. The second count of the present indictment, with all necessary averments, charges the statutory offense of arson in the 2d degree, which is a felony, punishable by imprisonment in the penitentiary. Is the first count good and sufficient as a charge of arson in the 3d degree, which is only a misdemeanor, punishable by a fine and imprisonment in the county jail, or at hard labor for the county? The Attorney-General contends that it is a defective charge of arson in the 2d degree, advantage of which should have been taken by demurrer; the contention, on the other hand, of appellants being, as we have seen, that it is good and sufficient as a charge of arson in the third degree, and, considered alone, not demurrable. The charge in this count is that the defendant set fire to, or burned, the gin house of A. W. Coleman. The degree of arson, whether second or third, which the law ascribes to the burning of a gin house, is determinable by the value of the house and the property therein contained. If of the value of $500, or more, the offense is in the second, otherwise, the third degree. The count under consideration, (the first count), does not allege the value. The authorities seem to leave no room for discussion of the question here presented. The case of *Brown v. State*, 52 Ala. 345, settled that an indictment, in principle, like the count we are considering, was good, on demurrer, as a charge of arson in the third degree; and that case was followed in *Cheatham v. State*, 59 Ala. 40. Since these decisions were rendered, a form of indictment for arson in the 3d degree has been prescribed and introduced into the schedule of forms in the Code of 1886, (See Cr. Code, p. 267), wherein the allegation is

inserted that the arson was committed under such cir-
cumstance as did not constitute arson in the first or
second degree; but we do not accord to this form the
force of law further than is required by section 4899 of
the Code, which merely provides that the forms pres-
cribed, in all cases in which they are applicable, are suf-
ficient; and analogous forms may be used in other cases.
If, under the general law, considered apart from the
form, the indictment is sufficient, it will be so held.
The result is that the first count of the present indict-
ment is good, as a charge of arson in the third degree,
which is a misdemeanor; and being joined with a count
for arson in the second degree, which is a felony, the
verdict can not be referred to either, and the motion in
arrest of judgment should have been sustained.

There was no error in overruling defendant's objec-
tion to the question put to State's witness, Coleman:
"What was the similarity between the tracks at the forks
of the road and at the seed room door?" The objection
to it was that it called for the opinion of the witness.
We think in cases of this kind, where many, and often
indescribable, peculiarities and characteristics are to be
considered in ascertaining the identity of a thing; a wit-
ness who saw these peculiarities and had the means of
forming a correct conclusion, may testify to the identity,
as a collective fact.

There is clearly no merit in the objections to proof of
the testimony of the deceased witness, Bob Brown, given
on the former trial of this cause.

The objections to that portion of A. W. Coleman's tes-
timony concluding with the words, "Giller then said that
Etheridge and Ike Kyser had run him off," were too
general. Much of the testimony, to say the least, to
which the objections were referrible, was competent and
legal, and if the objections had been sustained that testi-
mony would have been excluded.

Manifestly, no sufficient predicate was laid for the ad-
mission of the testimony of the witness, Hardy, on the
former trial, and the court committed no error in so hold-
ing.—*Lucas v. State*, 96 Ala. 51.

There was no error in permitting the witness, Hassel-
vander, to testify that the pieces of jugs found in the
*debris* of the burned gin-house or mill looked like they
had been burned. It was such an opinion as a witness

[James *et al.* v. The State.]

may give, and its materiality was shown by other evidence.

The exceptions to the two charges given at the instance of the State are not well taken. It is too evident to admit of doubt, that there was no purpose or effort in either of these charges, to define the measure of proof necessary to justify a conviction, and the jury could not have been misled by them, on that subject. The point of the charges is, that the case of Wes. Etheridge had nothing to do with this trial; and their meaning and substance are that if this offense is made out against these defendants they should be convicted, without regard to any influence it might have on the case of Etheridge, or whether Etheridge had anything to do with the burning or not. No one, reading the charges, and ascribing to them their plain, ordinary meaning, would ever suppose they were intended to authorize conviction upon a less measure of proof than is sufficient to satisfy the jury beyond a reasonable doubt.

The jury may have believed from the evidence that the gin-house might, by possibility, have been carelessly or negligently or accidentally burned, yet the evidence may have been such that they were satisfied beyond a reasonable doubt that such was not the case, but that the defendants willfully burned the same. The third charge requested by defendants is not consistent with this principle. Moreover, it is argumentative and calculated to mislead.

The fourth charge requested by defendants is so incomplete we can not consider it. Its references to extrinsic matter are such as to be unintelligible, without some further explanation which the record fails to furnish.

Charges 9 and 14 are arguments merely.

For the error mentioned the judgment of the city court is reversed and the cause remanded. Let the prisoner remain in custody until discharged by due course of law.

Reversed and remanded.