280 So.2d 163

**Tommie Lee KNIGHT, alias**

**v.**

**STATE.**

**5 Div. 82.**

Court of Criminal Appeals of Alabama.

June 26, 1973.

Phillip E. Adams, Jr., Opelika, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

ELIAS C. WATSON, Circuit Judge.

The Lee County Grand Jury indicted defendant in a two count indictment, charging defendant with burglary and grand larceny. Defendant entered a plea of not guilty to the indictment and was tried and convicted on both counts. He was sentenced therefor to ten years in the State penitentiary.

For a résumé of the facts we quote from the State's brief:

"G. C. Littleton testified that on December 1, 1970, he was the owner and operator of a business known as the Littleton Real Estate and Insurance Agency located at 404 South 10th Street in Opelika, Alabama. Witness testified that on that date he owned and had in his place of business a small York safe of the approximate value of $75.00. He further testified that he also had two cash boxes in the office on that date, one of the boxes containing some small change and a $5.00 bill taped to the top of the box and the other containing some mixed currency and change located in a cabinet safe.

"Mr. Littleton testified that he had locked up the building as usual upon leaving his office on the afternoon of December 1st. The next morning when he arrived around 7:30 A.M. the witness noticed that the building had been burglarized and that the metal side door to the building had been sprung open. Mr. Littleton testified that upon making an examination of the premises, he discov-

ered that the York safe and the cash box containing the $5.00 bill taped to the top was missing. He further testified that the cabinet safe had been pried open and the other cash box emptied of cash. The testimony of the witness was also to the effect that the front door which he had locked the evening before prior to going home for the night was unlocked when he returned to work the next morning.

"Mr. Littleton testified that he did not know the defendant but that he had seen him on several occasions in his office during November seeking a place to rent. Witness further testified that defendant could not have seen the cash boxes nor the York safe on the occasions he was in the real estate office seeking a place to rent.

"Mr. Littleton testified that the property taken from his office consisted of the York safe valued approximately $75.00 and $37.06 in cash.

"On cross examination, Mr. Littleton testified that he handled real estate for other persons and received a commission on the rental of the property. He testified that the $5.00 bill represented money that turned up over the amount of the receipts the office was supposed to have collected on one particular day previously and had been taped to the top of the box to be kept separate from the rest of the money checked in that day.

"On re-direct examination Mr. Littleton testified that he had identified his safe as it was being recovered from a creek out beyond the Farmville Community in Lee County, Alabama.

"Robert Fred Lumpkin testified that on the night of December 1, 1970, he was on duty as a police officer for the City of Opelika. He testified that he had seen the defendant at approximately 11:40 P.M. on that night on Clanton Street in Opelika. Officer Lumpkin testified that he and Officer Berry were observing a 1957 blue and white Chevro-

let turning off Lake Street onto Clanton Street. As the car turned the corner and stopped, the defendant and another person walked up to the car. The witness testified that as Officer Berry turned on the blue light the defendant and another person ran three or four steps before stopping.

"Officer Lumpkin testified that he had observed the car earlier that evening at the intersection of Avenue C and South 10th Street in Opelika, approximately 100 feet from Littleton Real Estate and Insurance Agency. He testified that it had an out of county tag on it and that it looked suspicious but that he had no reason to stop the car at that time.

"On cross examination Officer Lumpkin testified that the first time he observed the automobile he wasn't able to tell who was driving. Officer Lumpkin testified that the person in the car was driving slowly along South 10th Street and looking in all directions. The witness testified that the next time he saw the car, when he and Officer Berry pulled it over, it was being driven by one Joe Lewis Reed and that the defendant and one Ben Bandy were standing outside the car.

"Detective Abbott testified that on December 1, 1970, he was employed by the City of Opelika as a detective for the Opelika Police Department. The witness testified that he took part in the investigation of the burglary of the Littleton Real Estate and Insurance Agency in Opelika on December 1, 1970, and as a part of his investigation he talked with the defendant on December 4, 1970. At this point the Court excused the jury. Following the jury's exit the district attorney indicated to the court that he wished at this time to introduce into evidence two statements made by the defendant. He stated that the defendant had been advised of his rights on three occasions during the investigation and

indicated his desire to go into each of them while the jury was out.

"After the Court had indicated its assent to this proposal, Detective Abbott testified that he had first warned the defendant of his rights at the time defendant was arrested and testified as to how the warnings were administered. Witness further testified that the defendant at this time told the witness that he had completed the ninth grade and could read and write. Detective Abbott further testified that the witness read, stated that he understood, and then signed a form containing the warning of constitutional rights and waiver of the same. No statement was made by defendant at this time, however.

"Witness Abbott then testified that two days later on December 4, 1970, prior to making his first statement, defendant was again warned of his constitutional rights, again read, and stated that he understood, and then signed the waiver of rights form. Detective Abbott further testified that no promises, inducements or threats of any kind were made by himself or anyone in his presence to get defendant to make a statement.

"At this point following a short cross examination by Mr. Adams in which Detective Abbott testified that since he had not been with the defendant the whole time since he had first been arrested he could not say positively that no one at all had ever threatened or induced the defendant to make any statement. The Court ruled that the requirements of Miranda v. Arizona [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] had been satisfied and ordered the statement read."

During the taking of State's testimony in an examination of the witness Abbott, before the reception of any statement by the court in the absence of the jury, Exhibit No. 3 was read and admitted into evidence. In each instance thereafter, Officer Abbott gave testimony that the same questions

were asked of the defendant and the same answers made and waiver of rights signed in each instance. Exhibit No. 3 is as follows:

"YOUR RIGHTS      DTX–3
6–9–71
RS

"Place     OPELIKA POLICE DEPT.
"Dated    12/2/70
"Time     3:45 PM
"Education  9th GRADE

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during the questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

## "WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promise or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed  /s/ Tommie Lee Knight

"Witness  Vance N. Abbott
"Witness  Fred R. Davis
"Time    3:50 PM"

---

The first statement that the defendant made, according to the testimony of Officer Abbott, was made on December 4, 1970, at approximately 11:10 A.M. and it reads as follows:

"On the night of 12–1–70 me and Joe Louis Reed was together in my car about 8:30 o'clock as near as I can remember the time. I'm not sure of the exact time. Joe said, 'I'm going to break in a place up there if I have to break in it by myself.' I said, 'Well, you're going to have to because I show ain't gone be with you, not breaking in no place.' Joe said, 'Come on, and let me out then.' So I, Tommie Lee Knight, drove up there by Turner Tire and let Joe Louis Reed out of the car. When he got out, he reached in the floor and said, 'Let me get my tools.' I couldn't see what he took out of the car. Joe Louis Reed got out and I drove to the Dixie Vim filling station and a boy in a green Mustang Mach I wanted to run me, but we didn't run.

"Then I started to go home and I caught Joe walking. He was almost home. He was going up the street facing Jeeter Street School. I stopped and Joe got in the car. Joe said, 'Well, I went in the place, man, and a little old safe thing in there had $21.00 in it and

there is a big one in the back and it can be moved because I rolled it around.' I said, 'Well, I damn sure ain't going in there, I ain't even going that way.' Then Joe said, 'Take me to get Ben because Ben will help me.' So we went and got Ben over in a alley across from a school. He wasn't at home but was across the street from where he lives. Then we come back and turned right almost in front of Police Headquarters. As we went by a real estate place on the right Joe said, 'That's the place I went in right there.' I know the place because I went in there about two or three weeks ago to rent a house. I drove on past the place, stopped at a stop sign and went straight across.

"Then I drove like going toward the welding place and just back this side of the welding place, Joe told me to stop, that he had to get something. Joe got out of the car and got something off the bank out of some grass. I guess it was that screwdriver and crowbar because it sounded like metal when he threw it in the floor of the car. Then I turned around at the welding place and we drove in the same general area between the welding place and the Police Dept. Then Joe said, 'Park the car right here,' and I parked. Joe said, 'Come on, man, and go with us,' and I said, 'No, man, hell, no.' So we walked on up the street and Joe said, 'Come on and when we get there all you got to do is walk across the street.' So I went with Joe Reed and Ben Bandy. We walked on the street until we got almost to Turner Tire and Joe Reed and Ben Bandy put socks on their hands. Joe Reed asked me if I was going to put some socks on my hands and I said, 'Hell, no, cause I ain't going in there.' Joe said, 'Well, come on and walk around the building and go across the street and see if there is a car coming.' So I walked between Turner Tire and the building behind it and went across the street. I walked by some

Greyhound Bus trucks, van-type trucks I believe you call them. There wasn't no car coming so Ben and Joe walked across the street carrying a safe and come on up the alley. Joe told me, 'Walk this alley out, man, and see what's down there.' So I did, I walked to the railroad track and come back and told them what was around there. Then on the way back I met Joe Reed and Ben Bandy bringing the safe on around to the railroad tracks. Then Joe and Ben hid the safe right beside the railroad track. Then I said, 'Well, I'll go get the car.' And Joe said, 'No, man, I'll go get the car.' You see, Joe was scared if I got the car I would leave and go home because that's what I was going to do. So Joe went to get the car and me and Ben walked down the street. I talked about going home and Ben said no, to wait on Joe. About that time Joe came across the railroad tracks in the car and the police car was behind him. When I looked back, the blue light was on. Joe pulled up beside us and told us to get in. Then the officers arrested Joe and checked my I.D. and let us go. Then Ben said, 'What we going to do about the safe?' And I said, 'I ain't going to do nothing except try to get my car back.' "

The next statement made by the defendant, according to the testimony of Officer Abbott, was made on December 5, 1970, at 10:35 A.M., and it reads as follows:

"All the statement I gave Sgt. Abbott yesterday about the burglary of Littleton's Real Estate is true except for the part about me leaving the safe by the railroad track and not going back. After I came to the Police Department and couldn't get my car on the night of the burglary, I went and borrowed a car. This was in the early morning hours of 12-2-70. I borrowed the car from Eddie James Lewis and I told him I just needed it to run down to the country and back. What I really did with the car

was to come up East Street and turn left up the railroad tracks. I stopped on the street right there at the safe, where we had left it earlier that night. I put the safe in the trunk of the car and drove to a highway that goes between Waverely and Roxanna. I stopped and backed off the highway about a mile this side of Jack Lavelle's beer joint near a creek. This is where I showed Sgt. Abbott, and Detectives Davis and Woodley that I broke open the safe. I took a screwdriver, a tire tool and a hacksaw blade and broke the safe open. I also used a nail to knock the hinge pins out. After I got the safe opened, I saw there wasn't any money in it. I threw the safe, the safe door, and all the papers in it in the creek. I toted them all out on the bridge and dropped them off. Then I came on back to town and carried the man's car home. I have read the preceeding statement and it is true and correct to the best of my knowledge."

It was brought out on cross-examination of Officer Abbott that he had taken the five dollar bill from Joe Louis Reed.

According to the State's brief, evidence in behalf of the defendant consisted of the following:

"The defendant made a showing of an absent witness, one Walter Collins. The testimony shown was that approximately 10:00 P. M. on December 1, 1970, the defendant drove up to the Dixie Vim Service Station in Opelika and filled his car up with gasoline. The witness would have further testified according to the showing that the defendant and he were together from approximately 10:00 P.M. until 12:25 A.M. the following morning."

The first point raised by the appellant is that the defendant, Tommie Lee Knight, was not an accomplice, aider or abbettor to the original burglary of Littleton's Real Estate Office.

■ As to this contention, we feel the following cases are controlling: Mote v. State, 28 Ala.App. 68, 180 So. 110, where the Court of Appeals stated:

". . . It is elementary, of course, in order to constitute burglary there must be a 'breaking into and entering' of the building in question. It is not essential that the breaking and entering shall be simultaneously done. . . ."

The breaking may be done at one time and the entry at aonther. Walker v. State, 63 Ala. 49.

■ The initial "breaking and entering" by Joe Reed and the subsequent re-entry constituted one continuing offense. At the second entry by Joe Reed and Ben Bandy, the defendant admits by his confession that he was in the vicinity of the building and acted as a lookout. The defendant contends that his participation is not sufficient to find him guilty of the burglary.

■ Code of Alabama, 1940, recompiled 1958, in Tit. 14, § 14, makes one who is an aider and abettor equally guilty as a principal. It states:

"When, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not."

This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting the active perpetrator in the commission of the offense, is a guilty participant; and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists and the extent of it, from the conduct of the parties and all the testimony adduced. Morris v. State,

146 Ala. 66, 41 So. 274; Jones v. State, 174 Ala. 53, 57 So. 31.

"*Aid* and *abet* 'comprehend all assistance rendered by acts or words of encouragement or supports or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Raiford's Case, 59 Ala. 106; Tally's Case, 102 Ala. 65 et seq., 15 South. 722." Jones v. State, supra.

■ In the defendant's testimony he admits being present when Joe Reed and Ben Bandy entered the building to see if anyone was coming down the street. This act and his presence were sufficient to constitute the necessary "community of purpose" needed to be proved for conviction as an aider or abettor under Tit. 14, § 14, supra.

As to the general verdict, the Supreme Court of Alabama has held on numerous occasions that where several indictments for grand larceny and burglary are tried together, and each was sufficient, a verdict found the defendant as charged, and a sentence no greater than could have been imposed on any one of the indictments, are not available to reverse the judgment of conviction. Lucas v. State, 144 Ala. 63, 39 So. 821; Cawley v. State, 37 Ala. 152; James v. State, 104 Ala. 20, 16 So. 94.

■ The sentence for both second degree burglary and grand larceny is one year to ten years. The general verdict by the jury and the sentence of ten years was sufficient to sustain the conviction for either count.

Although this matter was not discussed in the brief of appellant, it is considered that the following point raised on objection of defendant is relevant to this appeal.

■ It is the law and procedure in Alabama that upon an examination of a witness or witnesses from whom the State is undertaking to prove the voluntariness of a statement or any aspect of *Miranda,* supra, the defendant has the right to take the stand and offer testimony that his statement was not voluntary and that such testimony was given and adduced under circumstances which would render his statement inadmissible. He has the further right to call other witnesses to support his contention and this testimony taken outside the presence of the jury is for the limited purpose of the voluntariness of the statement and does not make the defendant a witness in the case in chief and he cannot be examined by the State before the jury concerning any matter. His testimony is solely considered by the court as to the court's duty to determine whether the statement was voluntarily given. Where all the evidence adduced on direct and cross examination of the witness tends to show that the statement was voluntarily given, and there is no testimony to the contrary the defendant is not to complain that the State did not account for every minute of the defendant's presence in the jail.

■ The United States Supreme Court has stated that the admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The record must show or there must be an allegation and evidence which show that the accused was offered counsel but intelligently and understandingly rejected the offer. Duncan v. State, 278 Ala. 145, 176 So.2d 840.

■ Further, the State has the burden of proving the corpus delicti independently of the defendant's confession before the conviction can be upheld. Robinson v. State, 45 Ala.App. 74, 224 So.2d 675; Martin v. State, 44 Ala.App. 395, 210 So.2d 704. The law provides that if any facts

are shown from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible. Phillips v. State, 248 Ala. 510, 28 So.2d 542. Here, the State proved by the undenied testimony of witnesses that a burglary had in fact been committed. Additionally, the State offered evidence which tended to (a) place the defendant at the scene of the crime on the night it occurred and (b) show that the defendant, along with two other persons, was not only present but acted in such a manner as to arouse a justifiable belief that his presence was related to some guilty purpose; e. g., the hour was late and as testified to by Officer Lumpkin his companion, Officer Berry, turned on the blue light of his police vehicle and the defendant and another person actually ran a short distance away from the officer before stopping. It is clear that the uncontroverted proof of the crime having been committed, coupled with the defendant's complete confession and supported by independent evidence of his guilt-suggesting actions on the night of and at the place of the crime's commission. more than justify the jury's conclusion that the defendant had participated in the commission of the crime.

From this examination we conclude that error is not made to appear.

The foregoing opinion was prepared by ELIAS C. WATSON, Jr., Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code of Alabama 1940, as amended 1958; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

ALMON, TYSON, HARRIS and De-CARLO, JJ., concur.

CATES, P. J., not sitting.