HARRIS, Presiding Judge.
Under an indictment charging murder in the first degree appellant was convicted of murder in the second degree and the jury fixed her punishment at ten years in the penitentiary. At all times in the lower court appellant was represented by counsel of her choice and at arraignment pleaded not guilty. Trial counsel represents her on this appeal.
On the night of March 28,1976, appellant shot and killed her husband in the driveway to a service station in Tuskegee, Macon County, Alabama. Earlier that evening the deceased called his girl friend at her home and told her he would pick her up. The deceased had been going with this woman for about six months and the appellant knew about the affair. The deceased drove to this woman’s house, whose name was Mae Pearl Felton, in a borrowed car and was returning to the Fire Station where he was employed.
As the deceased was returning to the Fire Station with Mae Pearl Felton they met and passed appellant driving in the opposite direction. Appellant turned her car around and followed the deceased until he pulled into the area of the service station.
Felton testified that the deceased got out of the car and walked back to the car *700 appellant was driving where they talked for a few minutes. Felton did not hear this conversation. Shortly thereafter the deceased and appellant approached the car in which Felton was sitting and Felton saw appellant with a pistol in her hand and heard her say that she was going to take them to the Fire Station and kill them. Felton saw the deceased reach for the pistol in appellant’s hand and told her to give him the gun. Appellant backed away and the deceased moved toward her, saying, “You gonna shoot me?” Felton stated that appellant then fired the pistol hitting the deceased in the chest. The deceased turned to run and appellant shot him again.
Felton stated that appellant came to the car where she was still seated and said, “I’m going to kill you, too, _,” and fired twice striking her across the spine and under the shoulder blade. Felton then saw appellant walk to where her husband was lying on the ground, kneel and shoot him again. Felton said, “Katherine, don’t shoot him any more,” and then staggered to a nearby house where the police and ambulance were called.
Van Pruitt, Jr., a toxicologist, testified that he conducted a postmortem examination on the body of the victim. He stated there was a gunshot wound to the left mandible, a gunshot wound to the lateral right buttocks, and a gunshot wound to the left chest. He said that this slug passed through the left lung and went through the heart. The toxicologist stated it was this wound, resulting in massive hemorrhage, that caused Jesse Kennebrew’s death.
Appellant’s version of the shooting was in sharp conflict with Ms. Felton’s testimony. Appellant testified that in January, 1976, she saw a bill from a department store which showed that a lady’s pants suit had been charged. She confronted her husband with this bill and he became very angry and started beating her. She then left home carrying their baby girl, Linda, with her. She stated that she drove away from their home and the deceased pursued her in another vehicle. She further testified that the deceased pulled alongside her waving a pistol and motioned her to pull over. When she refused to stop the deceased overtook her and fired a shot in the air in her direction. She stated that she was driving so fast that she lost control of the car and crashed. She testified that after she crashed she abandoned the car and started running through the woods and she could hear the deceased shooting after her. Appellant detailed other incidents in which her husband physically mistreated and abused her. Several witnesses, including the appellant’s mother, supported appellant’s testimony about these abusive acts.
We think it fair to say that the marriage between appellant and the deceased was pleasant and harmonious until the deceased started going with Mae Pearl Felton.
Appellant further testified that the deceased had owned several pistols and that he carried a pistol in the pocket of his leather fireman’s jacket. She said he didn’t only carry pistols but he also slept with them. In her own words, “He slept with the pistol at the bedside on a can beside the trash can he laid it there every night that he lay down ... He never left home without it. Never.”
On the night of the fatal shooting appellant said she left home around 10:00 p. m. to borrow some milk for her daughter. On her way to get the milk she saw her husband driving in the opposite direction. She turned around and followed him until he turned into the service area of the Phillips 66 Station. She stopped her car just behind the car her husband was driving. She stated her husband got out and started walking back to where she was stopped. She got out to meet him. She noticed he was wearing his fireman’s jacket in which he always carried a pistol.
From the record:
“Q. Now, when you got out of the car, tell the Court and jury exactly what happened when you got out of the car.
“A. Well, when I got out of the car, Jessie came back there and he said, ‘where do you think you’re going this time of the night.’ And we started arguing, and I started snickering and I said, *701 ‘it doesn’t matter, all I want you to do. Jessie, is give me some money for this baby some milk.’ And, he kept hitting on me and shoving me and I finally fell, and I—
******
“Q. While he was walking after you, and while you were backing up, what did he say?
“A. Well, I had the gun in my hand, and I said, ‘stay away from me Jessie, I don’t want you hitting on me and fighting me, all I want is for you to give me the money for Linda some milk, and I will get back in my car and leave.’ ”
Appellant further stated that when she fell her husband placed one of his hands inside his jacket pocket and pushed against her chest with his other hand. She said she had already seen her husband’s pistol that night and that he was trying to pull it from the holster inside his jacket. During this scuffling appellant claimed, “My gun went off and shot him.” Then the deceased got off her, turned and ran. As he was running he was still “trying to get that gun out of that holster,” and she shot him again while he was reaching toward his hips.
Appellant denied shooting “Jesse when he was down.” She stated after the incident with Mae Pearl Felton she got in her car and drove to the police station. She told the officer on duty to call an ambulance because she had shot her husband and his girl friend. She said she did not intend to kill her husband saying, “I didn’t even know the gun had discharged."
Mae Pearl Felton and several other witnesses testified the deceased carried a pistol at times and some said he carried one habitually.
In rebuttal the police officers who investigated the shooting testified that the deceased did not have a pistol or a holster on or about his person at the time they arrived at the murder scene. These officers stated they made a thorough search of the scene and no other weapon was found.
There was no motion to exclude the State’s evidence; there was no motion for a new trial, and no exceptions were reserved to the oral charge to the jury. Appellant did request the affirmative charge which was refused.
The evidence was in sharp conflict surrounding the events leading up to the homicide. Conflicting testimony is an issue to be resolved by the jury. It is apparent the jury did not believe appellant’s version concerning the shooting death of her husband.
It is settled law that this Court is without power or authority to pass judgment on the truthfulness of conflicting testimony, and a verdict rendered on such testimony is conclusive on appeal. May v. State, Ala.Cr.App., 335 So.2d 242.
The weight and credence to be given to the testimony of an accused as it relates to self-defense are questions for the jury. Garraway v. State, Ala.Cr.App., 337 So.2d 1349; Walker v. State, Ala.Cr.App., 339 So.2d 155.
Where the evidence raises a question of fact for the jury and such evidence, if believed to the required degree, is sufficient to sustain the judgment of conviction, the refusal to give the affirmative charge does not constitute error. Robinson v. State, Ala.Cr.App., 339 So.2d 145; Young v. State, 283 Ala. 676, 220 So.2d 843.
We have given careful consideration to the many refused charges requested' by appellant. We find that by far most of the refused charges state correct principles of law but we also find they were substantially and adequately covered in the Court’s oral charge to the jury. Title 7, Section 273, Code of Alabama -1940.
A thorough and careful search of the record reflects no error injuriously affecting the substantial rights of the appellant.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.