Robbery; thirty-five years.
Tommy Lee Walls was adjudged an indigent and trial counsel was appointed to represent him on this appeal. He is before this court with a free transcript.
This case involves the armed robbery of a convenience store. Ninety-four dollars were taken, and the store employee, Linda Edwards, was shot in the hand. The only robbery participant who actually entered the store was one Ronald McDonald. He robbed Mrs. Edwards while the appellant and two confederates waited in a car outside the store.
On March 25, 1978, Linda Edwards was working at a U-Totem store in Birmingham, Jefferson County, Alabama. She testified that a man, one Michael Duncan, whom she later identified, walked into the store that Saturday afternoon about 1:00 P.M., looked around, and walked out. Subsequently, another man, one Ronald McDonald, identified by Edwards at trial, entered the store and said, "give me all of your money, I'm going to kill you."
Edwards opened the cash register and began taking out money. She stated that, while emptying the register, she saw the man pull "the thing back on the gun." When Edwards handed the money to the man she heard the gun fire and the man say "you're dead." He then walked out of the store.
At that point, Edwards ran outside screaming that she had been shot and saw the man [McDonald] running toward a car occupied by three people. She testified that McDonald tried to get into the back seat but fell out of the car. Edwards described the vehicle as being a "silver car with a red top." When she first observed the car it was being driven toward the driveway leading to the store.
About the time that Mrs. Edwards ran outside screaming, a van pulled into the driveway of the store. She informed the occupants of the van that she had been shot and robbed and shouted, "there he is." She testified that, at that point, "they ran after him [McDonald]."
During cross-examination the witness testified that, at the time she ran out of the store, no other cars except the car that the appellant was attempting to "jump in" were around. She acknowledged that she had not seen the appellant at the scene of the robbery.
Randall P. Lane, his brother, Radford Lane, and Radford Lane's son-in-law, Michael *Page 1188 
Melvin, drove to the Carson Road U-Totem store on the afternoon of March 25, 1978. Lane testified that they pulled into the parking lot and saw Ronald McDonald leaving the store. Lane stated that McDonald was from five to ten feet outside the door and was heading across the sidewalk toward the right side of the store. Lane remembered that, at that point, the Edwards girl came out of the store and screamed "he shot me."
According to Lane, McDonald "was not in a fast run or fast walk or nothing, he was just trying to get in the car, into the back seat on the right side of the car." Lane stated that the car was "moving slowly out into the street and McDonald was kind of trotting along behind the car trying to catch the car. The car moved on out into the street and went thirty or forty yards I guess, and stopped and McDonald was still coming up behind the car and me and this other boy tackled him."
Upon that occurrence, the car left in a "hurry." The witness testified that three people were in the car, two men in the front seat, and a third person in the rear seat. Lane said he could not tell whether the third passenger was a man or a woman. The car was described by Lane as a "1977 Chevrolet Impala, silver bottom with a maroon top, four-door sedan, first three tag numbers were ANU." Lane explained that he got only the first three digits of the tag number because "the tag was tilted down."
During cross-examination, Lane testified that McDonald attempted to enter the car while "the car was moving slow and he opened — the door was open. Anyway, he was trying to get into the back seat and he fell and the car continued moving on out into the street, and as long leg man as he was it looked like he could have caught the car but he didn't, you know he just was more like he was jogging."
When questioned as to whether anyone had pushed McDonald from the car, Lane responded, "I don't think so . . . I think he just fell."
On March 25, 1978, Radford Lane had driven to the U-Totem store on Carson Road with his brother and son-in-law. As the three approached the store, Radford Lane saw a lady run from the door of the store and heard her scream that she had been shot. He testified that she was "bleeding real bad," and that he administered first aid in an attempt to stop the bleeding. About the same time that Lane heard Mrs. Edwards yell, he saw the man, later identified as McDonald, on the sidewalk. Radford Lane yelled to McDonald to stop but McDonald began running.
On March 25, 1978, Louis E. Smoke was a deputy sheriff with the Jefferson County Sheriff's department and was "on patrol." According to Deputy Smoke, he was on Highway 75 between Center Point and Pinson when he received a police radio broadcast, announcing that an armed robbery was in progress at the U-Totem store at 2401 Carson Road. Subsequently, he received a police radio broadcast concerning the arrest of the occupants of a " '77 or '78 maroon and grey Chevrolet," with a tag number beginning "ANU." Smoke immediately searched in the general vicinity of the store for the two white males and one white female who had been described in the broadcast.
Smoke testified that the vehicle used in the armed robbery was seen near the Valleybrook Apartments complex off Gallant Drive. He observed two white males and one white female approaching the robbery vehicle. Smoke proceeded to the automobile, but the three persons saw the patrol car, turned immediately and began walking away from the robbery vehicle. Deputy Smoke testified that the three were arrested and that the vehicle was placed in the custody of Birmingham police officers.
Sandra Kathleen Gibson testified that, in March, 1978, she lived with her parents in Panama City, Florida. Later that month, while staying with friends on the beach, she met Tommy Walls and Michael Duncan. Gibson returned to Birmingham with Duncan and the appellant [Walls].
The next day, the morning of the robbery, she met Ronald McDonald at a house, *Page 1189 
but she did not know where it was located. She testified that McDonald was driving a "silver Chevrolet at the time." According to Ms. Gibson, while at the house, the three men talked about robbing a drug store near a police station. Further, she stated "if they had to they would shoot their way out of it." Gibson testified that they were all drinking at the time. She remembered that Duncan had placed a pistol in his pocket and that she had overheard the three men discussing a shotgun.
When the four people left the house, Gibson rode with Tommy Walls in a Vega automobile and Michael Duncan rode with McDonald in the silver Chevrolet. According to Ms. Gibson, brief stops at Duncan's house and at a Magic Mart were made. Later, upon arriving at the U-Totem store, they parked the two cars by the side of the store. Walls left the Vega and began conversing with McDonald and Duncan. Gibson said that the men were talking about robbing the store and that McDonald said, "I think I'm going to rob this store." Ms. Gibson did not remember exactly what the appellant said at that time. However, she did testify that "they were trying to talk him out of robbing the store." She said "they really had no plans about robbing the U-Totem store . . . that was strictly McDonald's idea."
The appellant entered the store and returned with a sandwich and "coke" for Ms. Gibson. She testified that Michael Duncan also entered the store, but she could not remember whether McDonald had gone in at that time. The witness stated that, before McDonald entered the store, she was told to get into the silver Chevrolet. Appellant then transferred the contents of the Vega to the silver Chevrolet and wiped the fingerprints from the Vega with a "napkin or something." She said Duncan sat in the driver's seat of the silver Chevrolet and the appellant sat on the passenger's side of the front seat. Gibson stated that she sat in the back seat.
Duncan drove the car around the corner and parked the car, engine running, to wait for McDonald. Gibson testified that she was told by appellant to open the rear door of the car. A few minutes later McDonald ran out of the store. Gibson did not hear the gunshot but she did hear a girl scream. The witness stated that the car was moving at that time and that McDonald "grabbed on and he fell out." Gibson denied that Walls had pushed McDonald out of the car and restated that "he fell out."
Gibson acknowledged that they proceeded down the road then stopped for a few seconds when McDonald was seen running toward the car. Further, Gibson said Duncan drove away when McDonald was grabbed and thrown to the ground. Appellant and Duncan began to argue over who was to blame for McDonald's fall from the car. Each blamed the other.
Ms. Gibson testified that a shotgun, seen by her under Duncan's coat at Duncan's house, was later placed by Duncan in the silver Chevrolet. Further, she stated that McDonald, while at the house, had placed a pistol in his pocket. However, she did not see the appellant with a gun on that occasion.
During cross-examination, Gibson acknowledged that the appellant told McDonald "if you rob this place I'll leave." She stated, "he was trying to talk him out of it." The witness repeated that appellant was the one "wiping the fingerprints off the car." She explained that he had wiped the seat and the steering wheel. According to Ms. Gibson, Duncan and appellant thought that McDonald was inside the car when Duncan proceeded down the road. The witness denied that the appellant had pushed McDonald from the car and stated, "no, he was not pushed."
At the end of Ms. Gibson's testimony, the defense moved to exclude the State's evidence on the ground that it had failed to establish a prima facie case against the defendant because, "the State's only witness testified that the defendant here did not participate in the robbery and did not take part in planning the robbery and that she testified to his intention to commit another robbery." *Page 1190 
The motion was overruled, and the defense called Ronald McDonald. He testified that he had known the appellant for about seven or eight months. On March 25, 1978, McDonald, while driving on the freeway in the Eastlake area of Birmingham, Alabama, saw appellant and waved him over to the roadside. According to McDonald, the appellant's companions were Michael Duncan and a girl. McDonald acknowledged that he was drunk at the time and had been "shooting drugs." The four persons attended a party in the Eastlake area and then decided to go to Duncan's ex-wife's house where a birthday party for one of Duncan's children was in progress. McDonald and Duncan rode together. They followed the appellant and Ms. Gibson.
Along the way, McDonald and the three others stopped at a U-Totem store. McDonald admitted that he told the others he was going to rob the store because he needed "a shot of dope." In the parking lot of the U-Totem store McDonald showed a gun to appellant and said "I believe I'm going to rob this place because I need a shot." The appellant responded "if you do, I'll go off and leave you." The appellant proceeded to back his car out of the parking lot, and McDonald said he followed the appellant in his car. According to McDonald, the four were continuing on to the birthday party when he signaled to stop at another U-Totem store.
After they pulled into the parking area, McDonald suggested that everyone ride in his car and they began transferring articles from the Vega to the silver Chevrolet. Appellant was informed by McDonald that he was going into the store to buy cigarettes and some wine. While inside, McDonald decided on the spur of the moment to rob the store.
McDonald stated that, immediately prior to entering the store, he never mentioned to his companions his intention to commit the robbery. He explained that the only mention of a robbery occurred when the four made the previous stop at a different convenience store. McDonald testified that, after robbing the store, he accidentally shot the clerk. According to McDonald, he then ran out of the store and attempted to enter the car, but appellant pushed him away. McDonald testified that the appellant did not participate in the robbery, nor did he know about it.
McDonald admitted that he had been indicted for the robbery of the U-Totem store, that he had pleaded guilty to the charge, and that he had received a sentence of twenty-five years.
During cross-examination, McDonald stated that, immediately after the robbery when the car was moving out of the store driveway, the right door of the car was open. He denied that his fall from the car was an accident but said, "Tommy pushed me back out." McDonald did not remember whether the car stopped after he had fallen. However, he did recall that after his fall he ran down the road, but said that the car was not stopped.
Tommy Lee Walls testified that he had been convicted of grand larceny, forgery, assault with intent to murder, burglary and escape. According to the appellant, he met Duncan and Ms. Gibson in Florida, and Gibson accompanied the two men on their return to Birmingham to get Duncan's motorcycle. The appellant stated that in Florida there had been no conversation concerning any robbery. Walls testified that the three arrived in Birmingham at approximately 4:00 A.M. on Saturday, March 25, 1978. He said it was around 7:30 A.M. when they saw McDonald on the Interstate.
According to appellant, he and the three others went first to a friend's house. Later they left to attend a birthday party for one of Duncan's children. Walls stated that Ms. Gibson rode in the Vega with him and McDonald and Duncan were in the other car. The appellant stopped at a convenience store to get cigarettes, McDonald pulled his car alongside the Vega and stated his intention to rob the store. Appellant said that he replied: "Go ahead, but if you do I'm leaving." The appellant then cranked his car and backed out. McDonald proceeded to do the same. *Page 1191 
McDonald drove past the appellant and later pulled into a U-Totem store on Carson Road. Walls also pulled into the parking lot. Walls stated that Duncan at that point, decided to leave the Vega there for friends to pick up later. The men then proceeded to move belongings from the Vega to McDonald's car. According to the appellant, McDonald told the others that he was going into the store to buy wine and cigarettes. After McDonald had entered the store the appellant heard a shot and a woman's scream. When Walls turned, he saw McDonald running out of the store. The appellant told Duncan, "[that] m-f is robbing this place, man let's go."
Walls mentioned that McDonald attempted to enter the moving car through a rear door which was open; however, appellant insisted that he pushed McDonald away. Walls stated that they proceeded to leave McDonald, although they subsequently stopped on the road.
The appellant denied that he knew McDonald intended to rob the store.
During cross-examination, the appellant denied any knowledge of the red and white checkered pillow case "with the holes cut in it for eye holes." Further, he denied instructing Ms. Gibson to open the door for McDonald. Appellant stated that he did not know why Duncan had stopped the car after McDonald had fallen.
 I
The appellant contends the evidence presented by the State was insufficient for the jury to find him guilty as an aider or abettor in the robbery. He argues the evidence clearly reveals that, although he was present at the scene of the robbery, he was not the actual perpetrator. Further, he maintains the evidence was undisputed that McDonald went into the convenience store by himself and committed the robbery.
Alabama Code 1975, § 13-9-1, provides that:
 ". . . all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors."
The law as to the meaning of the words "aid and abet" is well settled. This court, in Watkins v. State, Ala.Cr.App.,357 So.2d 156, stated:
 ". . . it must also be remembered that the words `aid and abet' comprehend all assistance rendered by acts, words of encouragement or support, or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary."
See also, Jones v. State, 175 Ala. 53, 57 So.2d 31; Radke v.State, 292 Ala. 290, 293 So.2d 314.
A common enterprise can be entered into on the spur of the moment without preparation or pre-arrangement. Fuller v. State,43 Ala. App. 632, 198 So.2d 625. Actual participation need not be proved by positive testimony. The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented. Knight v. State, 50 Ala. App. 457, 280 So.2d 163.
In the present case, the evidence concerning the existence and extent of appellant's knowledge of and participation in the robbery conflicted. However, the evidence presented to the jury was sufficient for them to reasonably conclude that the appellant knew in advance of McDonald's intentions. The transcript of evidence reflects that appellant remained in the car, engine running and door open, in order to implement a speedy getaway when McDonald returned from the store.
Evidence that the appellant knew of the presence of the sawed-off shotgun in the car is undisputed. Testimony that Walls "wiped down" the Vega was presented. Further, appellant told Sandra Gibson to open the car door for McDonald when he ran from the store.
In this case, the jury resolved the conflicting evidence regarding the existence *Page 1192 
and extent of the appellant's participation against the appellant. When such a determination is based on legal evidence, it cannot be disturbed on appeal. Watkins, supra;Knight v. State, supra; May v. State, Ala.Cr.App.,335 So.2d 242; Kennebrew v. State, Ala.Cr.App., 356 So.2d 699.
 II
The appellant argues that Sandra Gibson must be considered an accomplice as a matter of law and that his conviction should not stand because Sandra Gibson's testimony connecting him with the commission of the robbery was not corroborated.
Whether the witness is an accomplice may be a question of law or fact depending on the circumstances. Doss v. State, 220 Ala. 30,123 So. 231. Where there is doubt or dispute on this issue and the testimony is susceptible to different inferences, then the question is for the jury. Sweeney v. State, 25 Ala. App. 220,143 So. 586; Horn v. State, 15 Ala. App. 213, 2 So. 768.
It cannot be said as a matter of law that Ms. Gibson was an accomplice; therefore, the question of complicity was for the jury to decide. Jacks v. State, Ala.Cr.App., 364 So.2d 397. In the present case, Ms. Gibson's testimony was susceptible to different inferences on the question of complicity. Under these circumstances, a jury question was presented.
We also note that the lack of corroboration of Sandra Gibson's testimony was not asserted as a ground on the motion to exclude, nor in the motion for a new trial. No objection to her testimony was made on such ground. Under these circumstances, this court will not consider the question raised for the first time on appeal. Only those matters which were properly raised in the trial court will be considered. Harrisv. State, Ala.Cr.App., 347 So.2d 1363; Segers v. State,283 Ala. 682, 220 So.2d 848; Harnage v. State, 290 Ala. 142,274 So.2d 352.
 III
In a motion for a new trial, appellant asserts that the sentence he received is excessive. He argues there was great disparity in the thirty-five year sentence given him and the twenty-five year sentence given McDonald in light of their respective participation in the robbery. We note that the trial court gave consideration to the fact that McDonald had no prior record, while the appellant had several prior convictions, and stated when passing sentence:
 "I don't enjoy giving people a lot of time, Mr. Walls. I really, really don't. But society deserves a rest from your endeavors for a while, Mr. Walls."
This court in Hosey v. State, Ala.Cr.App., 344 So.2d 1230, recognized:
 "[T]hat it is the prerogative of the trial court to assess punishment within the legal limits, as sound discretion should dictate, and that the appellate courts should not usurp or invade the discretionary authority of the trial court in fixing punishment, within lawful limits."
See also, Goolsby v. State, 283 Ala. 269, 215 So.2d 602.
Based on the foregoing, it is our judgment that the sentence imposed by the trial court was not improper.
We have carefully reviewed the record and transcript of evidence and find no error prejudicial to the rights of the appellant. Therefore, it is our opinion that the judgment of conviction by the Jefferson Circuit Court should be affirmed.
AFFIRMED.
All the Judges concur. *Page 1193