The appellant was charged in a two-count indictment with the June 27, 1980, robbery and murder of Gwendolyn Bonner. The jury found him guilty as charged and the trial court sentenced him on each count to life imprisonment with both sentences to run concurrently. At arraignment and throughout the trial proceedings, appellant was represented by appointed counsel. Appellant gave notice of appeal and was found to be indigent. He is in this court with a free transcript and trial counsel was appointed to represent him on appeal.
Etowah County Coroner Bill Bragg testified that, around 9:30 a.m. on June 30, 1980, he went to view the body of a young black female at 141 Hillside Circle in Gadsden. He stated that the deceased had died from a gunshot wound to the right rear of the head. The deceased's wrists were tied together with shoelaces. Coroner Bragg testified that the body was in a state of decomposition. He stated that an autopsy was performed in Birmingham. Reports received by Coroner Bragg from firearms expert Lawden Yates and Toxicologist Chip Walls were admitted into evidence as appellant's exhibits. A photograph of the victim was properly admitted into evidence.
Dr. Joseph Embry, a forensic pathologist employed by the State Department of Forensic Sciences, testified that, around 2:00 p.m. on June 30, he performed an autopsy in Birmingham on a body identified to him as that of Gwendolyn Bonner. He described the decomposed state of the body and removed a bullet from the deceased's brain. He turned it over to Mr. Lawden Yates. Dr. Embry stated that he removed the shoelaces from the deceased's wrists and turned them over to Mr. John Case. Dr. Embry gave his opinion that the cause of death was due to the gunshot wound to the head.
On cross-examination, Dr. Embry reviewed the findings in the report of Toxicologist Chip Walls concerning alcohol content in the deceased's body fluid and stated that the finding reported therein were consistent with that of a body in the process of decomposition. He could not state whether the deceased had been drinking prior to her death. Dr. Embry estimated that the time of death was somewhere between Friday evening, June 27, and 6:00 a.m., Saturday, June 28, 1980.
Firearms and toolmarks expert Lawden Yates testified that he examined the bullet recovered from the body of the deceased. The bullet was a .38 caliber fired from *Page 316 
either a Charter Arms or R.G. made revolver.
Mr. Everette Kirby, a maintenance man for the apartment complex at which the deceased had lived, testified that, around 9:00 or 9:30 a.m., on June 27, he saw the appellant in apartment number 147, which was two apartments away from the deceased's apartment. Mr. Kirby stated that he and Floyd Betters were sent to repair and paint apartment 147, which was vacant, and discovered the appellant there. He did not know and had never seen the appellant. Mr. Kirby testified that the appellant asked if it was okay to sleep in the apartment for a while. Kirby and Betters went to lunch at noon and, upon returning around 1:00 or 1:30 p.m., Kirby saw the appellant upstairs asleep. He did not see him again.
Mr. Floyd Betters testified in addition to the testimony of Everette Kirby that he had asked Kirby to go upstairs to look for a drop cloth to cover the floor. He heard someone and some children and afterwards exited the apartment with Kirby. Mr. Betters stated that Kirby re-entered the apartment to see who was upstairs while he went to the manager's office. He did not ask the appellant his reason for being in the apartment. Mr. Betters stated that the appellant talked to them while they worked and said that he was waiting for his old lady and would be leaving around 3:30 or 4:00 p.m. He did not recall the appellant saying that he entered the apartment to use the bathroom but did remember his talking about sleeping.
Mr. Betters testified that he knew of Miss Bonner's request to change her door locks shortly before her death but did not know the reason for it. He stated that he did not know her boyfriend but knew that she owned a 1977 tan Subaru with a beige top. Mr. Betters did not know if a bullet hole in the deceased's car had been made by her boyfriend.
The deceased's brother, Edward Bonner, testified that, on June 30, he arrived at his sister's apartment before the police and inspected it and his deceased sister. Bonner stated that two sets of car keys, a diamond ring, a high school ring, an iron, duffel bag, and jewelry box were missing from the apartment. He did not know whether the items were missing before June 30. He also stated that his sister's car, a 1977 Subaru, was taken. The car's tag receipt containing its VIN was properly introduced into evidence. Mr. Bonner testified that a bullet hole in the car had been there for several months and he did not know who had made it. He stated that he did not think that his sister knew her most recent boyfriend, Alvin Jackson, when the bullet hole was made. Mr. Bonner stated that he did not discuss his sister's personal affairs or business with her.
Mrs. Lucy Bonner, the deceased's sister-in-law, testified that missing from the deceased's apartment were a wristwatch, an engagement ring, and a necklace. She stated that Alvin Jackson had given the deceased the engagement ring but that they had broken up on Wednesday, June 25, because he did not have a job. She did not know of any trouble between them. Mrs. Bonner stated that Jackson did not shoot the deceased's car.
Mr. Ned Gattis, an instructor at Gadsden State Technical College, testified that he had known the appellant for several years. Around 3:00 a.m., on June 28, Mr. Gattis returned to Gadsden from an out-of-town wedding and saw the appellant driving the deceased's car. He did not know the owner of the car but had seen it parked at the apartments located on Hillside Circle where the deceased lived. He described it as a tan Subaru. About five minutes later, Mr. Gattis saw the appellant standing beside the car parked at a laundromat.
Atlanta Police Officer R.A. Brown took the stand and testified that, around 3:00 p.m., on August 1, he arrested the appellant at an Atlanta service station for a City ordinance violation. Officer Brown stated that the appellant identified himself and, after being advised of his rights, stated that he wanted to leave the keys to the Subaru that he was driving with a friend. Officer Brown took the keys and found that they fit a 1977 beige Subaru with a Georgia *Page 317 
license plate. He requested a tag verification which indicated that the license plate on the Subaru belonged to a Ford car. Officer Brown asked the appellant if the car was his, to which he affirmatively replied, stating that he had bought it about three weeks ago for $2,000. The appellant could not produce a title certificate. The car was searched and a blank tag receipt and car invoice were found. In addition, the attache case, small black case, jewelry box, a few pieces of jewelry, and a duffel bag were found by Officer Brown. Officer Brown stated that later a complete inventory was conducted. He ascertained that the owner of the car was the deceased.
Gadsden Police Officer Howard Stakley testified that he retrieved the 1977 Subaru from Atlanta and drove it to Gadsden. He ascertained that it was owned by the deceased. At 12:37 a.m., on August 2, Officer Stakley began an inventory of the car's contents. The inventory revealed, among other things, numerous items of personal clothing, sewing material, an iron, a purple bedspread with stains and portions cut or torn off, various pieces of assorted luggage, several assorted tools, an R.G. model 31 .38 caliber gun box, numerous assorted toiletries, a spare set of car keys, and a set of scales.
On cross-examination, Officer Stakley testified that the bullet hole in the deceased's car had been there for some time as it had rusted. He stated that Tommy Blast, once a boyfriend of the deceased, had made it. Officer Stakley testified that the police investigation revealed that the deceased had broken her engagement with Alvin Jackson shortly before her death and had expressed her fear of him.
Mr. Gerald Harris, an employee at a grocery store located two to three blocks from the deceased's apartment, testified that seven to ten days prior to the killing the appellant entered the store and attempted to buy an extension cord but did not have enough money. Instead, the appellant bought a pair of long shoelaces. Mr. Harris stated that he had seen the appellant prior to selling him the shoelaces.
Gadsden Police Detective H.J. Copeland examined the deceased's apartment on June 30. Viewing the photograph of the deceased previously introduced into evidence, Detective Copeland identified a piece of purple and white checkered cloth tied around the deceased's ankles. He stated that a piece of cloth similar to that used to tie the deceased's ankles was found by Sergeant Cox in Apartment 147.
On August 4, Detective Copeland and Sergeant Gartman transported the appellant from Atlanta to Gadsden. He and an Atlanta police gave the appellant his Miranda warnings prior to transportation. Upon their arrival in Gadsden on August 5, the appellant was again given his Miranda warnings. After testifying to the proper voluntariness predicate, Detective Copeland stated that the appellant said that he had bought the Subaru and had bought, in Atlanta, a gun, box of shells, and a holster for a friend named Skipper or Skippy. Detective Copeland stated that the appellant said the gun had come in a box but could not explain how a gun box had gotten into "his" car. The appellant said that he had sold a van for $300, went to Atlanta and gambled it into $2,000, and bought the gun for his friend because he needed some money. The man named "Skipper" or "Skippy" was never found.
On cross-examination, Detective Copeland identified a police drawing of the suspect made by Sergeant Gartman. It was introduced into evidence. Detective Copeland stated that he knew of the deceased's broken engagement and that at one time Alvin Jackson had been a suspect. He did not recall whether he told the appellant anything about Jackson.
Gadsden Police Officer Teddy Cox testified that he worked in the police identification division and collected evidence on June 30 at the deceased's apartment. He took into his possession the strip of cloth tied around the deceased's ankles and on July 8 took into his possession similar pieces of cloth found in an upstairs bedroom of apartment 147. The strip of cloth that had bound the deceased's ankles was properly introduced into evidence. *Page 318 
Mr. George Green, a neighbor of the deceased, testified that, around 7:30 p.m. on June 27, the deceased arrived at his apartment and visited with him on his porch for about twenty minutes. She left and went to her apartment but returned. Around 8:30 p.m. she went home for the evening. Mr. Green stated that Alvin Jackson had lived with the deceased for about two months prior to their break-up. He knew of no trouble between them. Mr. Green stated that the deceased told him that she was postponing her wedding because she was not ready. He knew that she had wanted to change her door locks. Mr. Green testified that the deceased had parked her car across the street when she went home. He last saw the car around midnight. Mr. Green got up around 5:00 the next morning and did not see the car at the place where the deceased had parked it the night before.
Mr. Ralph Phillips, an employee with the State Department of Forensic Sciences testified that, on June 30, he picked up from Dr. Embry in Birmingham some shoelaces. On July 1, he delivered them to Mr. John Case, a criminalist located in Jacksonville.
Mr. Everette Kirby was recalled to the witness stand and testified that, on June 27, he saw in an upstairs bedroom of apartment 147 the pieces of cloth found by Sergeant Cox on July 8. They were properly admitted into evidence.
Mr. John Case, a criminalist with the State Department of Forensic Sciences, testified to receiving the shoelaces delivered by Mr. Phillips. They were properly admitted into evidence. He received the three strips of cloth found by Sergeant Cox. He was able to reassemble the strips into one piece of cloth and stated that the strips had been torn from one piece of cloth. He said the strips did not appear to come from the bedspread found in the deceased's car when the appellant was arrested.
Mr. Edward Bonner was recalled and identified as possessions of the deceased the scales, a set of car keys, jewelry box, and tote bag found in the deceased's car when it was inventoried. The items were properly admitted into evidence.
Mrs. Lucy Bonner was recalled and identified as belonging to deceased a necklace and white jewelry box found in the deceased's car when it was inventoried. The items were properly admitted into evidence.
At the conclusion of the State's case, the appellant moved to exclude the State's evidence on both counts contending that the State had failed to prove a prima facie case. This trial court overruled both motions. It also refused his request for the affirmative charge. The trial court granted the appellant's motion to exclude the lesser-included offense of manslaughter under count one of the indictment.
In his own defense, the appellant took the witness stand, corroborated much of the State's evidence, admitted being around the deceased's apartment on June 27, and entering apartment 147. He denied seeing or driving the deceased's car in Gadsden, stating that he bought it in Atlanta on June 29. Appellant denied sleeping in apartment 147, testifying that he entered it to use the bathroom, and denied buying shoelaces from Mr. Harris. He also denied killing the deceased.
Appellant's only issue on appeal concerns whether sufficient circumstantial evidence was presented by the State on both counts so as to submit the case to the jury.
In considering the question as to whether the trial court correctly overruled the appellant's motion to exclude the State's evidence, we may only consider the evidence which was before the trial court at the time the motion to exclude was made. Kent v. State, Ala.Cr.App., 367 So.2d 508 (1978), cert. denied Ala., 367 So.2d 518 (1979).
The State's case is clearly based upon circumstantial evidence. In Cumbo v. State, Ala.Cr.App., 368 So.2d 871, 874, cert. denied, Ala., 368 So.2d 877, we stated:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably *Page 319 
find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. . . ." (citations omitted)
See also, Johnson v. State, Ala.Cr.App., 378 So.2d 1164, cert. denied, Ala., 378 So.2d 1173 (1979).
 "It is our duty upon review to determine whether or not any theory of the evidence exists from which the jury could have excluded every hypothesis except guilty beyond a reasonable doubt. It is within the province of the jury to decide whether or not circumstantial evidence tending to connect the appellant with the crime excludes to a moral certainty every other reasonable hypothesis than that of appellant's guilt. Cumbo, supra, at 875. If facts are presented from which the jury may reasonably infer that the crime has been committed, although established by circumstantial evidence, the question must be submitted to the jury. Hopson v. State, Ala.Cr.App., 352 So.2d 500, 502, affirmed, Ala., 352 So.2d 506 (1976)." Mauldin v. State, Ala.Cr.App., 376 So.2d 788, cert. denied, Ala., 376 So.2d 793 (1979).
Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder and/or robbery prosecution, and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury. Dolvin v. State, Ala., 391 So.2d 133
(1980); Griffin v. State, Ala.Cr.App., 393 So.2d 523 (1981);Hopson, supra. The adoption of our new criminal code has not altered this rule.
In McDowell v. State, 238 Ala. 101, 189 So. 183 (1939), our Supreme Court opined:
 "The corpus delicti is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury." (citation omitted)
The circumstantial evidence which enshrouds appellant is as follows: (1) Several days prior to the killing, Mr. Gerald Harris sold the appellant a pair of long shoelaces. (2) Around 9:00 or 9:30 a.m., on June 27, Everette Kirby and Floyd Betters found the appellant in apartment 147 which was located two apartments away from the deceased's apartment. (3) Kirby saw the appellant asleep in an upstairs room of the apartment and identified the pieces of cloth found by Officer Teddy Cox on July 8 in an upstairs bedroom of apartment 147 as being there on June 27. (4) Mr. George Green last saw the deceased alive around 8:30 p.m. on June 27 and noted that he last saw her car around midnight, but when he got up around 5:00 the next morning it was gone. (5) On June 30, the decomposed body of the deceased was found in her apartment with her wrists bound by shoelaces and her ankles bound by a strip of cloth. (6) The cause of death was a gunshot wound to the rear of the deceased's head. (7) Dr. Joseph Embry retrieved a bullet from the deceased's brain and turned it over to firearms and toolmarks expert Lawden Yates who found the bullet to have been fired from either a Charter Arms or R.C. model .38 caliber revolver. (8) Dr. Embry estimated the time of death to have been between Friday evening, June 27, and 6:00 a.m., Saturday, June 28. (9) Around 3:00 a.m. on June 28, Mr. Ned Gattis saw the appellant driving a tan Subaru in Gadsden. (10) Edward and Lucy Bonner visited the deceased's apartment and noted several items missing, including the deceased's 1977 tan Subaru. (11) The Bonners later identified several items found in the car when it was taken from the appellant in Atlanta, as belonging to the deceased. (12) On June 30, Gadsden Police Officer Teddy Cox collected the strip of cloth binding the deceased's ankles and on July 8, found two similar strips of cloth in an upstairs bedroom of apartment 147. (13) Criminalist John Case testified that the pieces of cloth received from Officer Cox were originally part of the same piece of cloth and could be fitted together. (14) On August 1, Atlanta Police *Page 320 
Officer R.A. Brown arrested the appellant and impounded the tan Subaru which the appellant stated was his. (15) Officer Brown ran a tag verification upon the Georgia license plate on the car and found that it was not issued to the "appellant's" car. (16) On August 2 Gadsden Police Officer Howard Stakley, while making an inventory of the items found in the Subaru, found a gun box once containing an R.G. model 31 .38 caliber pistol. (17) Officer Stakley found that Alvin Jackson, once the deceased's fiance, did not shoot the deceased's car and make the bullet hole found thereon. (18) The appellant, after being transported to Gadsden from Atlanta by Gadsden Police Detective H.J. Copeland and advised of his Miranda warnings, stated that he had bought the Subaru from a friend in Atlanta, and a gun for a friend in Atlanta but could not explain the presence of the gun box in the car.
It is clear from the above evidence that the State presented sufficient circumstantial evidence to establish a prima facie case of both murder and first degree robbery. §§ 13A-6-2
(a)(1), -8-41 (a)(1), -8-43 (a)(1) Code of Alabama 1975 Amended 1975 (Amended 1977). Thus, the trial court did not err in overruling the appellant's motion to exclude.
At the conclusion of all of the evidence, the trial court properly submitted the facts to the jury for its consideration. We find no error in the verdict of the jury as the evidence was sufficient for it to have reasonably inferred appellant's guilt on both counts.
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is hereby affirmed.
AFFIRMED.
All the Judges concur.