**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Geno Pasquale RAFFONE,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas Ralph FARESE,**
**Defendant-Appellant.**

**Nos. 81–5163, 81–5257.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1982.

Louis Vernell, Miami Beach, Fla., for defendants-appellants in both cases.

Robert J. Lehner, U.S. Dept. of Justice, So. Eastern Regional Strike Force, Miami, Fla., William C. Bryson, Gloria C. Phares, Chief, Appellate Section, Dept. of Justice, Washington, D.C., for United States in both cases.

John S. Berk, Bruce S. Rogow, Nova University Law Center, Fort Lauderdale, Fla., for defendant-appellant in 81–5257.

Before VANCE and ANDERSON, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

Appellants Farese and Raffone were tried and convicted on one count (Count One) of conspiracy to possess marijuana with the intent to distribute it in violation of 21 U.S.C. § 846. Appellant Farese was also convicted of three substantive acts (Counts Two through Four) of possession with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). For his role in overseeing the events giving rise to the above charges, appellant Farese was tried and convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count Five). Appellants now contest their convictions on a number of grounds, several of which are examined below. Those not examined are either without merit or pertain to errors which were harmless.

I. FACTS

According to the evidence, Farese was the mastermind of a drug importation and distribution network centered in the Miami—Fort Lauderdale, Florida area. This "organization" supplied marijuana to local distributors who, in turn, distributed it to other cities. Farese ran this operation through a number of "lieutenants" and other, lesser-ranked, individuals.

Indicted as co-conspirators were several alleged members of the Farese network: Joseph Caruso, Patrick Robinson, John Scimone, and Robert Dello Russo.[1] In addition to Farese, those indicted on the substantive counts included: Caruso, Counts Two through Four; Scimone, Count Two; and

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. None of these defendants were found guilty.

appellant Raffone, Count Four.[2] Unindicted members of the Farese organization allegedly included Alan Rivenbark and Nicholas Forlano, among others.

The Government's principal witness was John Piazza. Piazza was one of the local distributors with whom the Farese organization dealt. In exchange for his testimony, he was granted immunity from prosecution for a number of crimes. The Government's case also included surveillance evidence, court-authorized tape-recordings, and other witnesses.

The indictment alleged that the conspiracy upon which the appellants were convicted occurred continuously from May of 1974 to April of 1977. Although a number of overt acts amounting to substantive violations were alleged, the specific acts giving rise to the three substantive counts were as follows: Count Two—Scimone and Forlano arranged the delivery of 200 or 250 pounds of marijuana to Piazza in October of 1975; Count Three—Scimone and Forlano were involved in the delivery by Caruso to Piazza of 1,000 pounds of marijuana near the end of 1976 or the beginning of 1977; Count Four—as a result of discussions between Farese, Caruso and Piazza, 2,000 pounds of marijuana were delivered to the "stash house" of Piazza and Dello Russo in March of 1977.

## II. THE UNCORROBORATED TESTIMONY OF AN ACCOMPLICE

■ Appellants argue at great length that the testimony of Piazza was uncorroborated and that their convictions may not rest solely upon the uncorroborated testimony of an accomplice. The former Fifth Circuit has repeatedly held, however, that convictions can be based upon the uncorroborated testimony of an accomplice, if that

testimony is not incredible or insubstantial on its face. *E.g., United States v. Darland,* 659 F.2d 70, 73 (5th Cir.1981), *cert. denied, Darland v. United States,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982); *United States v. Moreno,* 649 F.2d 309, 312 (5th Cir.1981); *United States v. Bolts,* 558 F.2d 316, 323 (5th Cir.1977), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977) and 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978). Indeed, although it was not necessarily required to do so, the district court did instruct the jury to examine the accomplice testimony "with great care."

■ Appellants nevertheless urge this court to recognize a distinction between the use of uncorroborated accomplice testimony to prove a "mere element" of a crime and its use to prove the corpus delicti of a crime. Specifically, appellants ask this court to analogize to the principle that the corpus delicti of a crime may not be established solely by the uncorroborated confession of an accused. *See Wong Sun v. United States,* 371 U.S. 471, 488–89, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). They support this analogy with their assertion that the possibility that an accused may confess to a non-existent crime is much more remote than the possibility that an accomplice, who, as in this case, has been immunized from prosecution, will "confess" to a non-existent crime.

This court has found no binding precedent recognizing the distinction being urged by the appellants. Former Fifth Circuit cases setting forth the law on this subject make no such distinction; nor is this court inclined to do so. Even if such a distinction were recognized, however, our disposition of the instant case would be no different since the record reveals substantial corroboration of Piazza's story.[3]

---

**2.** With the exception of Farese, none of the defendants were found guilty on the substantive counts.

**3.** Corroboration for Piazza's testimony takes several forms. The description below of several examples of such corroboration is not intended as an exhaustive survey thereof.

## III. LINKING FARESE TO THE SUBSTANTIVE ACTS

Farese (hereinafter, "appellant") also argues that even if uncorroborated accomplice testimony will suffice to support a conviction, Piazza's testimony did not sufficiently connect Farese to the events giving rise to the substantive counts. Initially it should be noted that although a conspirator may be held liable for substantive crimes committed by a co-conspirator in furtherance of the conspiracy, *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the jury was not so instructed in this case. Farese's conviction cannot, therefore, be sustained on a *Pinkerton* theory. *See Nye & Nissen v. United States*, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949). If appellant's conviction on the substantive counts is to be sustained, evidence must have been submitted to the jury sufficient to support either a constructive possession or an aiding and abetting theory as to each count.

The evidence was sufficient to support either of the above theories. Substantial evidence existed that the various persons who were in actual possession of the marijuana worked for Farese and were under his control. The jury might therefore have found that Farese was in constructive possession of the marijuana involved in Counts Two through Four. *See, e.g., United States v. Gloria*, 494 F.2d 477, 482 (5th Cir.1974), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974).

A careful review of the testimony also reveals that Piazza's testimony, as well as other evidence, did link Farese directly to the events in question in such a way as would support an aiding and abetting theory.[4] Furthermore, even if there had been no evidence tying Farese directly to the

---

In early 1976 Farese lent his secretary a truck for a household move. According to the testimony of the secretary, and/or her boyfriend, the truck smelled of marijuana and contained some marijuana seeds and stems. Later in 1976, Antonio Cerqueira, a naval engineer who worked for the Farese owned Olympic Shipping Lines, flew to Cayman Brac to make repairs on one of Olympic's ships, the Caribe Express. He testified that he reported to Mr. Farese hearing about the use of the Caribe Express for the transportation of cocaine and marijuana. According to Cerqueira's testimony, Farese told him to forget what he had heard, not to mention it, and to go back and finish his work. Cerqueira testified that upon returning to Cayman Brac, police officers showed him "some brownish leaves" in the cargo hold of the Caribe Express.

In December of 1976, a Hertz rental truck which had been rented by Farese's company and parked in his driveway was returned smelling strongly of unsmoked marijuana. About a month later, one Rhett Zambito was arrested with over a hundred pounds of marijuana in his possession. Piazza testified that he gave Zambito 158 pounds of marijuana from the late 1976 delivery.

All of this corroborates Piazza's story as to the events giving rise to Counts Two and Three and, with the exception of the Zambito arrest, also tends to corroborate the conspiracy theory. Tape recordings of conversations in Farese's office provide further strong support for Farese's involvement in a massive marijuana conspiracy operation. At one point in those

recordings, Farese referred to a newspaper article about legitimate shipping companies importing narcotics and marijuana and observed that the article was referring to his companies. Elsewhere Farese talked of always being able to run and hide with $5,000.00 if it became necessary, and of a "fresh harvest" in September. Among other things, Farese also spoke of the need for a couple of "legitimate deals" and the need for things to "blow over."

4. As to Count Two, Piazza testified that Scimone introduced him to Forlano in October of 1975. According to Piazza's testimony, Forlano said he would talk with Farese and try to arrange for Piazza to get back into "the business" as he had been once before. The testimony of Farese's secretary and his naval engineer is also relevant to Count Two. *See* note 3, *supra.*

As to Count Three, in October of 1976, Caruso and Piazza discussed a disputed debt to the Corsa Boat Company from a prior marijuana deal. (Piazza linked many of Farese's lieutenants to Corsa.) Caruso told Piazza that the debt didn't matter because they were "starting over" and then arranged a 500 pound delivery. Later in 1976, or in early 1977, a separate 1,000 pound delivery was made which gave rise to Count Three.

The Zambito arrest and the discovery of the Hertz truck were also made about this time. *See* note 3, *supra.* Piazza testified that he met directly with Farese to discuss who would bear the loss resulting from the Zambito arrest and

events in question, a conviction based on the theory of aiding and abetting would not have been foreclosed. There was ample evidence tending to show that Farese, in his position as the "mastermind" of the operation in question, aided and abetted his "subordinates" as they carried out the acts described in Counts Two through Four. *See Nye & Nissen v. United States,* 336 U.S. at 619, 69 S.Ct. at 769 (1949) (involving a series of substantive crimes committed by the petitioner's subordinates).

## IV. THE CONTINUING CRIMINAL ENTERPRISE

### A. *The Unanimity Requirement*

■ Appellant contests his conviction under 21 U.S.C. § 848[5] on two grounds. The first is that the trial court erred in not instructing the jury that it must unanimously agree on the identities of at least five persons who acted in concert with, and under the direction of, the appellant.

While citing no direct authority for this proposition, appellant begins his discussion of this issue with an examination of the holdings in *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977) and *United States v. Morris,* 612 F.2d 483 (10th Cir.1979). Farese Brief at 85–88. A close reading of these cases, however, reveals that *Gipson* is inapposite and that *Morris* contains certain language which, if anything, supports the Government's position on this issue.[6]

Somewhat more analytically, the appellant also notes that the "in concert" language of § 848 encompasses the same type of "agreement" necessary to the existence

---

that Farese personally took possession of the proceeds of the sale of a part of the marijuana involved in Count Three.

As to Count Four, Piazza testified that, following the Zambito arrest, he, Dello Russo, and Farese discussed arrangements for a future delivery of marijuana. By February or March of 1977, 2,000 pounds was delivered to a "stash house." In addition to certain declarations of Caruso and Raffone further linking Farese to this transaction, Piazza testified that he talked with Farese personally in the driveway of the stash house concerning the distribution of the marijuana.

**5.** Section 848 makes it a crime to engage in a "continuing criminal enterprise." Under 21 U.S.C. § 848(b), one engages in a continuing criminal enterprise if

(1) he violates any provision of this title or title III the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this title or title III

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

**6.** *Morris* involved the conviction of four defendants under 18 U.S.C. § 1955 which prohibits illegal gambling businesses "involv[ing] five or more persons." The jury also returned a verdict of guilty as to a fifth defendant, but, upon polling the jury, the trial court discovered that this was not the verdict of one of the jurors, Mr. Mould. The trial court then directed the jury to retire to the jury room to reconsider the verdict as to the fifth defendant. After further deliberation, Mr. Mould continued to disagree with the other jurors and the court declared a mistrial as to the fifth defendant. The court refused, however, to grant the requests of the defense attorneys that the jury then be repolled as to the other four defendants.

In remanding the case for a new trial, the Court of Appeals noted that when Mr. Mould decided that the fifth defendant was not a participant in the gambling business, this signalled an uncertainty about his votes as to the other four defendants. Although there were three unindicted participants in the gambling business, one of whom Mould might have had in mind as the fifth man in the operation, it was unclear that this was the case. The court noted that the fifth defendant might well have been the only other participant in Mould's view when he found the other four defendants guilty. 612 F.2d at 489–490, n. 12.

The support for the Government's position is derived from the Court of Appeal's emphasis on Mould's previous votes as to the other defendants. Speaking of Mould, the court felt it important that the fifth defendant "might have been the only other participant in *his* view." *Id.* at 490, n. 12 (emphasis added). No concern at all was expressed that the selection of a fifth participant by Mould be congruent with that of his fellow jurors. The court's analysis implied that no such congruency was required. *Id.* at n. 12 and accompanying text.

of a conspiracy. *Jeffers v. United States,* 432 U.S. 137, 149–50, 97 S.Ct. 2207, 2215, 53 L.Ed.2d 168 (1977) ("For the purposes of this case, therefore, we assume, arguendo, that § 848 does require proof of an agreement among the persons involved in the continuing criminal enterprise."). In order for a jury to convict a given defendant of conspiracy, according to the appellant, there must be unanimous agreement as to the identities of the various conspirators. Appellant concludes, therefore, that a jury must unanimously agree on the identities of the five co-conspirators necessary to a § 848 conviction.

Appellant cites no authority, however, for his assertion that, in a normal conspiracy case, the jury must unanimously agree as to the identities of the co-conspirator(s). The independent efforts of this court have likewise revealed no such authority. The failure of the contended for rule to surface in the dozens of cases surveyed casts doubt upon its validity.

The appellant in this case failed to request that the jury be instructed that it must unanimously decide with which "five or more other persons" appellant acted in concert. For the reasons set forth above, we perceive no plain error in the trial court's failure to have given such an instruction.

### B. *Finding at Least "Five or More Other Persons."*

■ Appellant also contends that the evidence at trial was insufficient to convict him of a § 848 violation. Once again focusing upon § 848's "five or more other persons" requirement, appellant contends that

the Government failed to adduce substantial evidence that Farese acted in concert with *any* five persons mentioned at trial. An examination of the record, in light of certain legal principles, leads this court to a contrary conclusion.

Appellant relies heavily on the fact that of the eight persons which the jury might reasonably have viewed as acting in concert with Farese,[7] four of them were "acquitted:" Robinson, Scimone, Dello Russo and Caruso. He argues, therefore, that "substantial evidence" necessarily did not exist as to their guilt in regard to the acts which allegedly were the predicate offenses[8] of the § 848 charge.

Assuming, *arguendo,* that appellant's "acquittal argument" is not without merit,[9] it does not apply to all four of the above-named defendants. Of the four, only Robinson was acquitted as the result of a jury verdict in the Farese trial. As to the others: Scimone's motion for a judgment of acquittal was granted by the trial judge; the indictment against Dello Russo was dismissed on collateral estoppel grounds; and Caruso's acquittal came in a subsequent trial. Because of the manner in which their indictments were disposed of, it is clear that the jury was not barred from considering at least Dello Russo and Caruso as two of the required "five or more other persons."[10]

In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court ruled that the acquittal of a charged principal does not foreclose the subsequent conviction of an aider and abettor. The former Fifth Circuit Court of Appeals relied upon *Standefer* in ruling that the acquittal of all of a defendant's

---

**7.** Robinson, Scimone, Dello Russo, Caruso, Rivenbark, Forlano, Piazza and Raffone.

**8.** Those offenses which satisfied § 848(b)(2)'s requirement of a "continuing series of violations."

**9.** Appellant's argument here appears to be based upon the traditional rule that a defendant may not be convicted of conspiracy in the same trial in which all of his alleged co-conspirators

are acquitted. *See, e.g., Herman v. United States,* 289 F.2d 362, 368 (5th Cir.1961), *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). Recently, however, that rule has been questioned. *See United States v. Espinosa-Cerpa,* 630 F.2d 328, 331–333 (5th Cir.1980).

**10.** As for the includability of Scimone, *see* note 11, *infra.*

alleged co-conspirators does not prevent that defendant's subsequent conspiracy conviction in a separate trial. *United States v. Espinosa-Cerpa,* 630 F.2d 328 (5th Cir.1980). Fundamental to both decisions was the recognition that juries are free to render "not guilty" verdicts as the result of "compromise, confusion, mistake, leniency, or other legally and logically irrelevant factors." *Espinosa-Cerpa,* 630 F.2d at 332, n. 4.

The fact that the charge against Dello Russo which was dismissed was part of the Farese indictment does not alter the fact that the jury decision necessitating its dismissal was made in a prior trial. Caruso's acquittal also came in a separate jury trial. As in *Standefer* and *Espinosa-Cerpa,* it is possible that those verdicts were based on "legally or logically irrelevant factors." The evidence was otherwise not insufficient for the jury to have counted Dello Russo and Caruso as two of the five persons required under § 848.[11]

Falling completely outside of the appellant's "acquittal argument" are Forlano, Ri-

venbark, and Piazza. These three were not even indicted. Substantial evidence existed that they acted in concert with, and under the direction of, Farese and the jury could have rationally counted them as doing so. These three, plus Dello Russo and Caruso, make the necessary five.[12]

## V. CONCLUSION

Based upon a thorough review of the applicable rules of law and the record before us, this court is of the opinion that none of the arguments raised by the appellants warrant reversal of the judgments of conviction entered below.

AFFIRMED.

R. LANIER ANDERSON, III, Circuit Judge, concurring specially:

I concur in all of the opinion authored for the court by Judge Allgood, except for Part IV.A., and I concur in the result reached in Part IV.A. I agree that there is no error

---

**11.** Scimone might also properly have been included. According to the Government, the trial judge who granted Scimone's motion for acquittal subsequently stated that "one of the reasons I acquitted Scimone was the many trials, ... I thought he was going to die and I was not interested in trying him .... I either had to sever out Mr. Scimone or acquit him. Believe me, that does not inure to the benefit of anybody else in the case. I want to put that on the record and make it clear." Brief for the United States at 21, n. 17 (citing *United States v. Caruso,* No. 78–8045–CR–NCR (Dec. 15, 1981) (Tr. 841)). It therefore appears that Scimone's acquittal was, in fact, partially based on "legally and logically irrelevant factors." While the former Fifth Circuit suggested in *Espinosa-Cerpa* that the conviction of a single conspirator should not be barred by the acquittal of all the alleged coconspirators in the same trial, note 9, *supra,* it did not actually reach that question. Nor is it necessary for this court to now do so in that we find that there were at least five persons other than Scimone as to whom there was substantial evidence of action in concert with Farese.

**12.** The jury may not have been barred from considering other persons also. First, in addition to Scimone, *see* n. 11, *supra,* Raffone may also be includable. While the former Fifth Circuit never took a position on whether or not a

conspiracy under 21 U.S.C. § 846 can be a predicate offense under § 848, *see United States v. Michel,* 588 F.2d 986, 1001 (5th Cir. 1979), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979), at least one Circuit Court of Appeals has said that it can. *See United States v. Middleton,* 673 F.2d 31, 33 (1st Cir. 1982). Raffone, of course, was not acquitted of the Count One conspiracy.

Second, while the former Fifth Circuit also did not decide the question of whether an overt act in violation of the drug laws may be a predicate offense under § 848 even though such act is not the basis for a separate substantive count, *see Michel,* 588 F.2d at 1001, n. 15, many courts have answered that question in the affirmative. *Id.* and cases cited therein. The record of the case at bar reveals a number of overt acts which would qualify as predicate offenses under § 848 and which involved persons acquitted under, or not named in, Counts One through Four.

As with Scimone, however, it is unnecessary for this court to resolve the issues of the availability of Raffone and the persons involved in the unindicted acts as persons whom the jury might have chosen from in finding "five or more other persons" under § 848. Substantial evidence exists in that regard as to at least five other individuals. *See* accompanying text.

(plain or otherwise) in the jury instructions in connection with the unanimity requirement. The trial judge charged the jury in general 'terms that defendant must have undertaken to commit such offenses in concert with five or more persons. The judge also charged the jury that its verdict must be unanimous. I conclude that the charge read as a whole fairly instructed the jury that they must be unanimous. For that reason, I agree that we need not address the legal issue as to whether the jury must unanimously agree on five specific persons, but I disassociate myself from any implied resolution of that legal issue in the majority opinion.