Appellant Harriet Clements Seagle was convicted by a Bessemer jury of the murder of Joel Waldrop at his office in a Bessemer trailer park. They also convicted her of first degree robbery of Waldrop.
The appellant was Mr. Waldrop's secretary. The victim's son went to visit his father on February 24, 1982, accompanied by a friend. The young men observed the office safe lying on the ground outside the trailer. They entered the trailer to discover Mr. Waldrop lying face down in the office/living room of the trailer, dead. They attempted to call the police but discovered the telephone cord had been cut. They called from a nearby trailer.
Appellant and a Mr. Jimmy "Red" Buckler had been observed together the previous day and the previous evening near the time of the crime. Around 10:00 p.m. that night, Buckler approached the car of witness Mike Atkinson, and gave him some pills which were later identified as having come from the deceased, Mr. Waldrop. Shortly thereafter, appellant was observed giving Buckler some money.
Barry George testified that later that same evening he and Mike Atkinson met the appellant and Red Buckler at a package store, where Mr. Buckler and appellant purchased some beer and gave some of this beer to him and Atkinson. These two men met with appellant and Buckler again at the Burger King on Highway 78 in Birmingham. Then they all proceeded to the downtown Sheraton where they took articles from the appellant's automobile and some beer and carried them upstairs to their room. They sat around and smoked marijuana provided by the appellant. Introduced in evidence were some photographs taken of this group at the Sheraton.
Atkinson testified that Mr. Buckler, while at the house of George, had shown him some articles in the trunk of the appellant's automobile. These included a lamp, a handgun, a quilt and some papers. Atkinson saw the name Joel Waldrop on some *Page 483 
of the documents and on one of the bottles of pills. Appellant stated to Atkinson that she and Waldrop had an argument, and that he had chased her and she in turn hit him in the head with "a vase or something." She said he fell to the floor and she got scared and left.
Atkinson had seen the appellant when she came to him and asked him to install a car stereo for her. He saw that she had purchased the stereo for approximately $300. He said that at that time she appeared worried and upset. Appellant gave Atkinson the handgun which she said had belonged to her father. Atkinson eventually turned this gun over to the authorities when he found out Waldrop had been killed.
While investigating the homicide, Sergeant Anthony Bellanca of the Bessemer Police Department took photographs of the scene and dusted for fingerprints. He made attempts to contact the appellant. Appellant returned his phone call and they agreed to meet at police headquarters. Appellant, Sergeant Bellanca and a Lieutenant Acker met at 10:30 a.m. on February 25. Bellanca read appellant her constitutional rights from a card. Appellant stated that she did understand her rights and she would answer questions. Bellanca testified no threats or coercion were used to compel her to give a statement. Bellanca told her that he was investigating the death of Joel Waldrop and wanted to talk with her about this. Lieutenant Acker, participating in the investigation, asked appellant if he might look in her purse. She gave him permission to look in her purse. There the lieutenant found eight $20 bills, several bills, a Kodak camera, a car stereo receipt, a Radio Shack receipt, and a Sheraton Motel receipt. He also found a bottle of nitroglycerin pills with the name Joel Waldrop on the prescription label. The appellant then broke down and told Sergeant Bellanca, "He's going to kill me." He asked who she meant and she said, "Red." Then she said, "Red is the one who killed Mr. Waldrop." Appellant, in her recorded statement, said that she had met Mr. Waldrop some two years earlier. He had loaned her money and she had occasionally spent the night in his house trailer. The day before, Mr. Buckler had asked her for money and the two of them had gone to see Mr. Waldrop to ask him to loan her some money to give to Buckler. She said Waldrop and Buckler got into an argument, Buckler picked up a lamp and hit Mr. Waldrop in the head at least twice. She said she was going to call for help but Buckler cut the telephone cord. She testified that after Buckler had gotten the combination to the safe from Mr. Waldrop, he opened the safe and removed approximately $4,000 and some papers. He gave $800 of this money to the appellant. The appellant stated that Buckler also took a gun, watches, binoculars, a pocket knife, and papers from the trailer. She said these items could be found at her apartment.
Lieutenant Acker testified that he went to Mr. Buckler's apartment, where he found pill bottles labeled with Mr. Waldrop's name, as well as a hammer, billfold, address book, coin purse, papers, a blanket, a watch, a knife, a key on a keyring and binoculars. Waldrop's son identified these items as belonging to his father. Fingerprints on the safe were the same as the prints of the appellant. The cause of the victim's death was cardiac arrhythmia due to a traumatic injury to the head.
 I
On appeal appellant first contends that the search of her purse violated her constitutional rights. The evidence was that Lieutenant Acker said to appellant, "Keeping your rights in mind, will you give me permission to look into your purse?" It appears that this search was voluntarily, intelligently and knowingly consented to, consistent with the principles enunciated in Bumper v. North Carolina, 391 U.S. 543,88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
Contrary to appellant's contention, no search warrant is required before a "consented to" search takes place. Hernandezv. State, 50 Ala. App. 558, 280 So.2d 831, 836, cert. denied,291 Ala. 782, *Page 484 280 So.2d 836 (1973), citing Payton v. State, 47 Ala. App. 347,254 So.2d 351 (1971). We find that no right of the appellant was violated by this procedure.
 II
Appellant contends that her confession was improperly admitted into evidence, now stating that she did not freely and voluntarily waive her rights. There was conflicting evidence on the issue. However, there is very strong evidence indicating the appellant's statement was voluntarily given. The trial court's finding that the confession was voluntary should not be disturbed on appeal unless manifestly and palpably wrong. SeeBurks v. State, 353 So.2d 539 (Ala.Cr.App. 1977).
 III
Appellant next insists that the state failed to prove the corpus delicti. Our courts have held that corpus delicti must be established by evidence sufficient to make out a prima facie case of guilt. Stated another way, the state has the burden of proving the corpus delicti independently of a defendant's confession before a conviction can be upheld. Knight v. State,50 Ala. App. 457, 280 So.2d 163 (1973).
The facts are that the appellant was observed with Buckler the night of the robbery/murder in possession of property of the deceased. The appellant's fingerprints were found on the lamp believed to be the murder weapon. The appellant told Mike Atkinson that she had hit Mr. Waldrop in the head with "a vase or something." There was no question that the victim was dead due to heart arrest resulting from the blunt force trauma. We feel that the corpus delicti was proven without regard to the confession of the appellant. There is no merit in this contention.
 IV
Appellant next asserts that the court committed reversible error in allowing the state to present evidence of the appellant's participation in the robbery of another elderly man who lived in the same trailer park two to three months after the instant offense.
Testimony was offered by David Allison, who stated that he, William Hutchins, and the appellant were riding around some two to three months after the homicide and robbery in this case. The appellant stated to the two young men that she knew where they could get some money real easy. She then drove the two boys in her car to a trailer in the same trailer park where Waldrop had lived, and told them that an old man lived in the trailer. She told the boys to go in and get money from the old man and that if he gave them any trouble to just show him their gun. Allison testified that they entered the trailer, found the old man lying on the floor drunk. They asked him for money but he would not give them any. They saw his pants hanging on a hanger on the wall and removed the wallet from his pants. The boys returned to appellant's car and as they drove from the scene the police appeared and placed all three of them under arrest.
As an exception to the general rule, the law permits the proof of criminal acts of the defendant to show criminal intent. In Hayes v. State, 384 So.2d 623 (Ala.Cr.App. 1979), writ quashed, 384 So.2d 627 (Ala. 1980), the court stated at page 626:
 "If the accused is charged with a crime that requires a prerequisite intent, then prior or subsequent
criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime. McElroy's Alabama Evidence, §§ 69.01 (5), 70.01 (2). See Fikes v. State, 263 Ala. 89, 81 So.2d 303; McKenzie v. State, 250 Ala. 178, 33 So.2d 488; Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 . . ." (Emphasis supplied.)
The evidence of the second incident was admissible, since it had a bearing on the contention of the appellant that she was an innocent witness to the robbery and murder of Waldrop rather than a full participant. *Page 485 
 V
Appellant contends that the evidence against her was insufficient to make out a prima facie case. The evidence at trial was amply sufficient to make out a prima facie case. It is immaterial whether appellant struck the fatal blow, as she stated to Atkinson, or whether her companion did so. Aiders and abettors in the commission of a felony must be tried as principals in this state. Magro v. State, 384 So.2d 871
(Ala.Cr.App. 1980), cert. denied, 384 So.2d 875 (Ala. 1980). Even if the facts were all circumstantial, where the jury by reasonable inference can conclude that the crime has been committed by the appellant, then that issue must be submitted to them. McCloud v. State, 401 So.2d 314 (Ala.Cr.App. 1981). The actual participation by an accused need not be proved by positive direct testimony. Sanders v. State, 423 So.2d 348
(Ala.Cr.App. 1982).
In light of the foregoing, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.