494 So.2d 936 (1986)
Katie Mae WRIGHT
v.
STATE.
1 Div. 123.
Court of Criminal Appeals of Alabama.
July 15, 1986.
Rehearing Denied August 12, 1986.
James H. Lackey, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and James B. Prude, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
This appeal follows the conviction of the appellant for the offense of trafficking in a controlled substance and a sentence of ten years' imprisonment.
The appellant, Katie Mae Wright, was arrested by the Mobile Police Department in an undercover operation in which the police participated in arranging the sale of a controlled substance, dilaudids. Using an informant, Officer Cochran of the Mobile Police Department contacted Willie Hinton, a/k/a "Chill," who knew someone wanting to purchase a "large quantity of controlled substances, specifically ... dilaudids." Hinton arranged a telephone conversation between Officer Cochran and the perspective buyers, a male and the appellant, each of whom participated in the negotiations through the use of separate telephone receivers. Officer Cochran negotiated an offer as to the selling price of the pills.
Officer Cochran testified that the agreement to sell 300 pills of dilaudids at a price *937 of $6,000 was reached between him and "both of the individuals" on the phone. Officer Cochran, as previously agreed, met the informant, Hinton, and the male, later identified as Henry Hosey, at a Burger King restaurant and consummated the drug sale; thereupon Hinton and Hosey were arrested for trafficking. Thereafter, in an effort to cooperate with the police, Hinton called the appellant in order that Officer Cochran could attempt to identify, locate, and arrest her. Officer Cochran talked to her from the police station and confirmed the identification through voice recognition and the appellant's admission that she was the person to whom he had spoken earlier. Officer Cochran told her that he was still at Burger King and was impatiently waiting. He tried to coax her into going to the Burger King with the money. She replied that the male, Hosey, had the money and might have gone to the wrong Burger King, as he had made that mistake before. She instructed Officer Cochran to remain at the Burger King and that she would arrive shortly in a little brown car with some money. The appellant was arrested upon her arrival at Burger King; she had $11,384.00 with her. She never took possession of any pills. After listening to the appellant, Officer Cochran verified that she was he same person to whom he had spoken during the two earlier telephone conversations, one of which was recorded and transcribed. In her statement to the police, the appellant denied knowing Hosey or anything about buying a "bunch of drugs." She alleged that she had merely stopped "to get a soda."

I.
The trial court correctly denied appellant's motion for directed verdict even though she never had possession of the illegal drugs. "An aider or abettor in the commission of a felony must be tried as a principal. Alabama Code 1975, § 13-9-1." Magro v. State, 384 So.2d 871 (Ala.Cr.App.) at 873, cert. denied, 384 So.2d 875 (Ala. 1980); Seagle v. State, 448 So.2d 481 (Ala. Cr.App.1984); Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). "`In Conley v. State, 354 So.2d 1172, 1177 (Ala.Cr.App. 1977), this court stated: "... `Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, brings the accused within the statute that makes each person concerned in the commission of a felony, directly or indirectly, a principal....'" Magro, supra, at 874. "The words `aid and abet' comprehend all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary." Sanders, supra, at 350, citing Watkins v. State, 357 So.2d 156 (Ala.Cr. App.1977), cert. denied, 357 So.2d 161 (Ala. 1978). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. "The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented." Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App.1979), cert. denied, Ex parte Walls, 378 So.2d 1193 (Ala.1980). Further, "`[p]articipation and community of purpose may be shown by circumstantial evidence or inferred from the conduct of the participants. Appellant's complicity is a question for the jury." Skumro v. State, 234 Ala. 4, 170 So. 776 (1936); Pearce v. State, 4 Ala.App. 32, 58 So. 996." Magro, supra, at 874. Therefore, "where the jury by reasonable inference can conclude that the crime has been committed by the appellant, then that issue must be submitted to them." Seagle, supra, at 485.
Factually, cases have held that where the appellant never actually had possession of the drugs during the commission of the crime, he may nonetheless be guilty of aiding and abetting as well as having constructive possession of the drugs via a co-conspirator. United States v. Cannington, 729 F.2d 702 (11th Cir.1984); United States v. Raffone, 693 F.2d 1343 (11th Cir. 1982). The jury could rely upon testimony that an appellant "had put up the money to conclude that he had aided and abetted the possession of the marijuana for its ultimate *938 distribution." United States v. Cannington, supra, at 709. "Alternatively, the same evidence could support the conclusion that [appellant], operating through his `lieutenant,' had constructively possessed the marijuana." Ibid.
The evidence was held sufficient to support either of the above two theories in United States v. Raffone, 693 F.2d 1343, 1346-47 (11th Cir.1982) wherein the appellant "controlled" various persons who were in actual possession of the marijuana; thus he was in constructive possession. He was also guilty of aiding and abetting because testimony and other evidence linked him directly to the events in question. The factual similarities to the case at bar are sufficient to support a finding of the appellant's guilt on both theories, i.e., as an aider and abettor, as well as having constructive possession of the drugs.

II.
The appellant alleges that she was entrapped by the police because they actually furnished the drugs upon which the arrest was based. The appellant bases her claim on cases from other jurisdictions which have held that entrapment exists under these circumstances. This, however, is not the rule in this jurisdiction; on the contrary, "`entrapment is not established simply because government agents "afford opportunities or facilities for the commission of the offense," Sorrells v. United States, ... 287 U.S. [435] at 441, 53 S.Ct. [210] at 212 [77 L.Ed. 413 (1932)] ... The legal defense of entrapment is not established whenever a defendant is caught by a ruse.'" Chillous v. State, 441 So.2d 1055, at 1057 (Ala.Cr.App.1983), citing United States v. Myers, 692 F.2d 823, 835 (2d Cir.1982). "A prosecution may not be defeated because the government provides the accused with the opportunity to commit the crimes charged." United States v. Tobias, 662 F.2d 381, at 385 (5th Cir.1981). "Entrapment occurs when state officers or persons under their control incite, induce, lure, or instigate a person into committing a criminal offense, which that person would not have otherwise committed, and had no intention of committing." Geckles v. State, 440 So.2d 1189, at 1191 (Ala.Cr.App. 1983). "`Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by the one who had the criminal intent.'" Jackson v. State, 384 So.2d 134, at 139 (Ala.Cr.App.1979), cert. quashed, 384 So.2d 140 (Ala.1980). Thus, the actions of the police must be more than merely providing the drugs or the opportunity to commit the crime. "The defendant must demonstrate not merely inducement or suggestion on the part of the government but `an element of persuasion or mild coercion.' United States v. Hill, [626 F.2d 1301 (5th Cir.1980)]." United States v. Andrews, 765 F.2d 1491, at 1499 (11th Cir. 1985). An example of such conduct occurred in a case where the defendant had at least once refused to participate in the deal, and then was persuaded to do so. United States v. Timberlake, 559 F.2d 1375 (5th Cir.1977). A defendant was entitled to have his entrapment defense considered by the jury where he was subjected to "persistent recruitment pressure" in which a government informant emphasized the defendant's own financial interest as well as his friendship with the co-defendant. United States v. Walker, 720 F.2d 1527 (11th Cir.1983).
On the other hand, a defendant has been found not entitled to the defense of entrapment to a charge of selling marijuana to an undercover officer where the officer he went to the defendant's home and asked about buying the drug. Geckles v. State, 440 So.2d 1189 (Ala.Cr.App.1983). This court has also indicated that an appellant is not entitled to an entrapment defense where he eventually sold an undercover agent marijuana although he had initially refused to do so because he did not know the officer. Pittman v. State, 462 So.2d 791 (Ala.Cr.App.1984). It is clear from the appellant's conversations with Officer Cochran that she already had the predisposition to commit the crime and that his *939 conduct merely furnished her with the opportunity and facilities. "The fact that appellant and his witnesses denied their intent to consummate the [crime] presented a jury question. When there is a contradiction in the evidence, the defense of entrapment should be resolved by the jury. Tyson v. State, [361 So.2d 1182 (Ala.Cr. App.1978)]; Johnson v. State, [291 Ala. 639, 285 So.2d 723 (1973)]; Demmon v. State, 46 Ala.App. 652, 248 So.2d 147 (1971)." Watson v. State, 439 So.2d 762, at 767 (Ala.Cr.App.1983). See also United States v. Walker, 720 F.2d 1527 (11th Cir. 1983); Jackson v. State, 384 So.2d 134 (Ala.Cr.App.1979). Thus, the appellant was not entitled to a directed verdict.

III.
Appellant contends that her conviction violates the due process and fundamental fairness doctrines of the Fifth and Fourteenth Amendments of the United States Constitution. This argument is without merit. "To be so `outrageous' as to effect a denial of due process, government enforcement techniques must be `fundamentally unfair' or `shocking to the universal sense of conscience,' United States v. Russell, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); United States v. Mulherin, 710 F.2d 731 (11th Cir.1983)." United States v. Andrews, 765 F.2d 1491, at 1498 n. 4 (11th Cir.1985). In Andrews, an undercover agent illegally transferred foodstamps through several dealings, which he recorded. The court held that "[t]he circumstances of this case surely fail to meet this stringent standard [of `outrageous' governmental conduct.]" Ibid, at 1498 n. 4. Governmental conduct wherein the informants "may have suggested the scheme and aided in arranging in the air transportation" was found not to constitute misconduct. United States v. Gray, 626 F.2d 494, 498 (5th Cir.1980).
The appellant relies on United States v. Twigg, 588 F.2d 373 (3d Cir.1978), wherein the government's conduct was found so outrageous as to violate due process. In Twigg, the government agent suggested the establishment of a drug laboratory, provided the place, equipment, supplies, and know-how, and then ran the entire operation with little assistance from the defendants. These facts are clearly distinguishable from those at bar.
"The limitations of the Due Process Clause of the Fifth Amendment come into play only when the government activity in question violates some protected right of the defendant. Here ... the police, the government informant, and the defendant acted in concert with one another.... If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." Hampton v. United States, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976). The police conduct here, as in Hampton, did not deprive the defendant of any right secured to her by the United States Constitution.
AFFIRMED.
All the Judges concur.